## SHARP ET AL. *vs.* KNOX.

APPEAL FROM THE COURT OF THE FIFTH DISTRICT, THE JUDGE OF THE SEVENTH PRESIDING.

Agreements must be enforced according to the intentions of the parties, unless some legal obstacle exists to their execution, apart from the difficulty of giving them a formal denomination or a name.

A confirmatory act, confirming and ratifying a will and compromising a law suit instituted to annul it, for an annual compensation in lieu thereof, &c., will be considered as a transaction.

A transaction may be rescinded, where there is error in the person or the matter in dispute, or when it is made in execution of a title which is null unless the parties compromised on the nullity, or if made on titles ascertained to be false.

A transaction, ratifying and confirming a will, which contains one or more grounds of nullity, cannot be rescinded.

It is not sufficient ground to set aside a transaction curing the defects in a will that the title derived under it is void, where that is the very ground or matter on which the parties compromised.

The petitioner and three descendants, instituted suit, in November, 1830, to recover from the defendant the succession of Eleanor O'Donogan, a deceased daughter, and the late wife of William G. Knox. Eleanor had bequeathed her estate to her husband. The plaintiffs alleged that Knox was incapable of inheriting, because of an *empêchement diri-mant*, the existence of a previous marriage in Ireland, and that the will was defective in many respects, both as to form and substance, and is null and void; and that Knox has taken possession of the estate under the will, as also the estate of her husband and two deceased sons, amounting in all to about twenty thousand dollars. They ask for an inventory and appraisement of the property, that it may be partitioned among them.

Eleanor O'Donogan, the wife of Knox, made her will and died in November, 1829. The mother, and now plaintiff, became dissatisfied, and brought suit to annul the will, on account of several alleged defects and causes of nullity, and to recover the estate of her daughter. During the pendency of this suit, she agreed to relinquish her claim to the estate and confirm the will, in consideration of one hundred dollars per annum, to be paid to her by Knox during her natural life. A confirmatory act was drawn up, reciting all the alleged nullities in the will; ratifying and confirming it in every particular, and stipulating the motives moving her to the act, and the consideration of one hundred dollars a year during her life, to be paid to her by Knox. This act was executed in July, 1830, by the parties, after explaining its meaning and effect to the plaintiff, in presence of a notary and witnesses. The former suit, pending at this time in the Probate Court, was dismissed for the want of jurisdiction. The present action was instituted in November following. The plaintiffs allege fraud in procuring the plaintiff, who was an old woman of seventy, to sign the confirmatory act. They pray that the will be annulled, as also the confirmatory act; the latter on account of fraud and lesion; and that an estimative inventory be taken of the property, and the title to

Western Dis.
Sept. 1832.
────────
SHARP ET AL.
vs.
KNOX.

the same be confirmed to them, and that Knox be declared without law or right to it, &c.

The defendant pleaded a general denial; averred the successions of the husband and two sons of the plaintiff have been long since settled and accounted for; sets up title to all the estate of Eleanor O'Donogan, his deceased wife, under the will, and confirmatory act of July, 1830, and prays to be quieted in his possession of the property, &c.

On the trial there was no proof that the defendant labored under any disability on account of a former marriage, but on the contrary he showed an excellent character and exemplary conduct. There was no evidence of fraud or improper conduct either in the execution of the will or confirmatory act.

*Gayoso*, for the plaintiff:

1. The will under which the defendant claims is absolutely null, whether considered as a private or public act.

2. That as a nuncupative will by public act it should have been received by a notary public and three witnesses residing in the place. *L. Code*, 1571.

3. The will should contain enunciations of all that was necessary to its validity; "express mention of the whole," &c. *L. Code*, 1571. That the enunciation of the place where it was executed is an essential one. 5 *Toullier, no.* 386. Besides that as an authentic act it should make full proof of itself. To allow the absence of the essential enunciations to be supplied by parole, would be to complete the act at different times, and would contravene the provisions of the *L. Code*, 1571, 2256.

4. To be valid as a public act, the will should have been dictated to the notary by the testator, in presence of the witnesses. *L. Code*, 1571. 5 *Toullier, no.* 410—13, 417. 3 *Martin*, 166.

5. It is required that the will must be written by the notary as dictated by the testator, and that all the formalities be performed at one time. *Ibid.* 5 *Toullier, no.* 408.

WESTERN DIS.
Sept. 1832.

SHARP ET AL.
vs.
KNOX.

6. The will is absolutely null, and cannot be made better by the confirmatory act. The nullities in a will can only be cured by a new will, executed in due form of law. 8 *Toullier*, no. 320. *Masse's Parfait Notaire*, 3 vol. 283.

7. If the confirmative act was not itself an absolute nullity, and could have any effect, it could only cure those nullities in the will which were specially set forth, and those only which the parties had in view at the time, and left open to attack all the others. *L. Code*, 2252. 8 *Toullier*, nos. 497–8.

8. The confirmative act was bad as a renunciation of the succession in favor of Knox, on account of error; as a compromise, because made in execution of a title which is null. *L. Code*, 1832, 1834, 3047–8.

*Lewis* and *Bowen*, for defendant.

PORTER, J., delivered the opinion of the court.

The plaintiff was mother and the defendant was the husband of Eleanor O'Donogan, deceased. The latter made her last will and testament, by which she instituted the defendant her universal heir. Difficulties arose between the parties in relation to the disposition of the testatrix's property, and a suit was instituted to set the will aside. Pending this suit, the parties went before a notary and entered into an agreement, by which the plaintiff declared "that having heard the said will and testament read, and having maturely deliberated on the contents thereof, in consideration of the good will and affection she cherishes for the said Wm. G. Knox, and as well as to carry into full effect the dying requests and intentions of her deceased daughter, and also for the further consideration of the premises hereinafter expressed, she hereby agrees to ratify and confirm, and does by these presents ratify and confirm the said last will and testament of her deceased daughter, in all its parts."

The instrument proceeds to recite the will and to set out various causes of nullity, for which it had been, or it was supposed might be attacked, and it concludes as follows:

"Now, therefore, the said Mary Sharp, by this public act hereby expressly renounces all exceptions to any and all of the above defects and nullities, as above enumerated and set forth, and with the express motive and intention of supplying and curing all said defects, she makes this renunciation, and hereby ratifies and confirms said will and testament in all its parts, and abandons all claims and pretensions whatever to the property bequeathed in the same; and does hereby give, grant, and assign over, to the said Wm. G. Knox, who is here present and accepts of the same, all her right, title, and interest, in the succession of her said deceased daughter."

In consideration of the premises, the defendant by the same act promised to pay the plaintiff one hundred dollars per annum during the term of her natural life.

Before entering into the consideration of the questions of law which have been raised and discussed at the bar, it is proper to state that we do not see in the record sufficient evidence to prove that this agreement was procured by fraud, or that improper means were practised to obtain the plaintiff's signature to it.

This agreement is said be be good either as

1. A sale.   2. An onerous donation.   3. A transaction.

It is somewhat difficult to know under what head of contracts this instrument should be classed.   But agreements cannot fail of their effect because they are not susceptible of a formal denomination.   It is the duty of courts of justice to enforce them according to the intentions of the parties, unless some legal obstacle exists to their execution apart from the difficulty of giving them a name.   We deem it unnecessary to examine whether this instrument be a sale or donation, remarking that we do not believe it was contemplated by the parties to be either.   We shall consider it on the last ground assumed, that it was a transaction.   A transaction or com-. promise is defined by our code to be "an agreement between two or more persons, who for preventing or putting an end to a law suit, adjust their differences by mutual consent in the manner which they agree on, and which every one of them

prefers to the hope of gaining, balanced by the danger of losing." It appears to us the agreement now before us comes within this definition.   A law suit was pending, by which the plaintiff claimed the whole of her daughter's succession. She agrees to surrender all claim in this estate for a certain sum.   This necessarily put an end to the demand in justice, and it was obtaining something certain, to the hope of gaining, balanced by the danger of losing.

WESTERN DIS.
Sept. 1832.

SHARP ET AL.
vs.
KNOX.
an annual com
pensation in
lieu thereof,
&c. will be
considered as
a transaction.

It is true a great many other considerations are thrown into the act, such as affection for the defendant, respect for the dying requests of the daughter, and then is a formal renunciation of various supposed irregularities in the will.   Still, it appears to us, these in no measure deprive the act of its substantive quality; and that it is in truth a surrender of uncertain and contested rights for a certain sum of money, to be paid annually.

It remains to consider the objections which may be made to the instrument, viewed as a transaction.   They were all embraced by the argument of the counsel for the plaintiff. An agreement of the kind according to the provisions of our code, may be rescinded where there is error in the person, or the matter in dispute, where it has been made in execution of a title which is null unless the parties have compromised on the nullity, or if made on documents which have been since found false.   *Lou. Code*, 3046—8.

A transaction
may be rescin-
ded where
there is error
in the person
or the matter
in dispute; or
when it is
made in exe-
cution of a ti-
tle which is
null, unless the
parties com-
promised on
the nullity, or
if made on ti-
tles ascertain
ed to be false

None of the grounds of rescission reach this case.   There was no error in the person, nor of the matter in dispute.   It is true, as contended, all the objections which may be made to the will are not enumerated in the act; and it is equally true, these and the others therein set out, may, together or separately, be of sufficient force to deprive the defendant of his quality as heir.   But the want of the quality which it was the object of the compromise to confer, cannot be considered an error of person by which the transaction becomes null. If that were true, then it would be impossible to transact on a disputed quality.   There is not, in our judgement, more force in the objection that the title was null, for that is the

very matter on which the parties compromised. True, all the objections which may be made to the will are not set out in the agreement; but the code does not require this. All it exacts is, that the parties shall expressly compromise in regard to the nullity of the instrument. This was done here, and surely it would be presuming wide of what must be supposed their intentions, that the plaintiff would renounce one nullity and would not another. Then, there is no evidence before us that the facts on which the nullities now brought foward were unknown to the plaintiff, at the time of the transaction. Her error, therefore, and the error of the defendant, were errors of law, and we have an express provision of our code that a contract made for the purpose of avoiding litigation, cannot be rescinded for error of law. *Lou. Code*, 1840.

The article in our code which renders null a transaction made on false documents, has no application to one made on an instrument, the reality of which was not contested, when the legal effect of it was alone in dispute, and where the very object of the compromise was to renounce all advantage the party might derive from nullities; which, admitting the instrument to have an existence, denied effect to it as the last will and testament of the deceased.

It is, therefore, ordered, adjudged, and decreed, that the judgement of the District Court be affirmed, with costs.