291 So.2d 892 (1974)
PLACID OIL COMPANY, Plaintiff and Appellant,
v.
Watson TAYLOR et al., Defendants and Appellees.
No. 4453.
Court of Appeal of Louisiana, Third Circuit.
March 12, 1974.
Rehearing Denied April 11, 1974.
Writ Granted May 31, 1974.
*893 Herschel M. Downs, Shreveport, for plaintiff-appellant.
G. F. Thomas, Jr., Sam J. Friedman, Makar & Whitaker by John Makar, Natchitoches, Robert J. Donovan, Shreveport, Daniel T. Murchison, Sam Nelken, Natchitoches, Luther S. Montgomery, Shreveport, for defendants-appellees.
Before HOOD, CULPEPPER and MILLER, JJ.
CULPEPPER, Judge.
This is a concursus proceeding by Placid Oil Company to determine the ownership of certain mineral and royalty interests in two 20-acre tracts. Placid lists 36 claimants, 35 of whom are heirs of Raford (Rafe) Taylor and his wife, Amanda Demery Nash Taylor, and of Watson Taylor and his surviving spouse, Nancy Williams Taylor, hereinafter referred to collectively as the "Taylor heirs". The other claimant is Mrs. Betty Beason.
The dispute arises out of two mineral deeds from the Taylor heirs to C. C. Copeland in 1964. A contract executed and recorded with these deeds states that the major part of the consideration is services rendered by Copeland in removing clouds from the titles of the Taylor heirs. The issue is whether these transactions are null and void on the grounds that Copeland, a non-lawyer, agreed to render or furnish legal services in violation of LSA-R.S. 37:213. The Taylor heirs contended in their answers that the Copeland mineral deeds are null and void. Mrs. Beason, who later acquired the Copeland mineral interests, contends the deeds are valid.
Placid Oil Company also attacks the Copeland mineral deeds because its leases from the Taylor heirs provide only a 1/8th royalty, whereas the lease of any mineral interests owned by Mrs. Beason provides a ¼th royalty. Placid deposited a full ¼th royalty attributable to the mineral interests in dispute. But it prays for a refund as to all funds in excess of those necessary to satisfy the 1/8th royalty under the Taylor heirs leases.
A further issue arises from the fact that while the matter was pending in the district court some of the Taylor heirs, but not all, entered into compromise agreements with Mrs. Beason. The agreements vary in certain respects, but each of them purports to ratify the Copeland mineral deeds and contract.
The district judge held the Copeland mineral deeds are null and void since the major consideration therefor was Copeland's agreement to render or furnish legal services, in violation of LSA-R.S. 37:213. However, he gave effect to the compromise agreements. As to those Taylor heirs who signed them, he held their interests are fixed by the compromise agreements and their interests are subject to the ¼th royalty lease. As to the Taylor heirs who did not sign a compromise agreement, the district judge recognized their interests are subject to the 1/8th royalty leases held by Placid. Hence, the ¼th royalties in the registry of the court attributable to the interests of the Taylor heirs who did not sign a compromise agreement were divided ½ to such heirs and ½ to Placid.
Only Placid Oil Company appealed. None of the other claimants appealed or answered the appeal and hence they cannot seek modification of the judgment.
On appeal, Placid urges the trial court erred in three respects: (1) Holding that the compromise agreements signed by some of the Taylor heirs and Mrs. Beason have the effect of ratifying the Copeland mineral deeds; (2) Holding that the compromise agreements are effective against Placid, although it is not a party to the agreements; (3) Ignoring Placid's leases from Pap C. Taylor, Watson Taylor and Robert Taylor, *894 which provide only 1/8th royalty and were recorded before the Copeland mineral deeds or the compromise agreements.
The trial judge was clearly correct in holding the Copeland mineral deeds and contract null and void. LSA-R.S. 37:213 provides in pertinent part:
"No natural person, who has not been duly and regularly licensed and admitted to practice law by the Supreme Court of this state * * * shall:
"(1) Practice law;
"(2) Furnish attorneys or counsel or an attorney and counsel to render legal services;
"(3) Hold himself * * * out to the public as being entitled to practice law;
"(4) Render or furnish legal services or advice;
"* * * Any natural person who violates any provision of this Section shall be fined not more than one thousand dollars or imprisoned for not more than two years, or both. * * *"
Each of the mineral deeds from the Taylor heirs to Copeland states that the consideration is "Ten Dollars and other valuable considerations." However, the contract which was executed and recorded with the mineral deeds, provides in part:
"Whereas; the Taylor heirs state that they, as heirs of the aforementioned ancestors are, or should be the owners of certain properties in Natchitoches Parish, Louisiana, the title of which they are not certain of, and which might have clouds upon said titles, because of mineral reservations, or other defects, and
"Whereas, Copeland, because of his experience, knowledge and education believes that he can remove all clouds from the said titles, and agrees to use all diligence in his efforts to do so, AT HIS SOLE EXPENSE, and the decision as to the method of procedure, and whether or not to institute litigation shall be left entirely to the discretion of Copeland, and
"Whereas; the Taylor heirs have executed a certain Mineral Deed covering and affecting certain lands in Natchitoches Parish in the percentage of their full interest, and disposition of said mineral rights, and whether or not to execute an oil and gas lease covering and affecting the land described in said mineral deed shall be at the sole discretion of Copeland, and
"Whereas, The consideration shown upon the said Mineral Deed is Ten Dollars and other considerations, it is understood and agreed that the major part of the consideration is the services rendered by Copeland in removing the clouds upon said title, and * * *"
The documents on their face show that the "major part of the consideration" for the mineral deeds was services rendered by Copeland in using his experience, knowledge and education to remove the clouds from the titles of the Taylor heirs. This unquestionably involved the rendering or furnishing of legal services by a non-lawyer, in violation of prohibitory law, LSA-R.S. 37:213.
LSA-C.C. Articles 11 and 12 provide:
"Art. 11. Individuals can not by their conventions, derogate from the force of laws made for the preservation of public order or good morals.
"But in all cases in which it is not expressly or impliedly prohibited, they can renounce what the law has established in their favor, when the renunciation does not affect the rights of others, and is not contrary to the public good."
"Art. 12. Whatever is done in contravention of a prohibitory law, is void, although the nullity be not formally directed."
Also, Civil Code Articles 1893 and 1895 provide:
"Art. 1893. An obligation without a cause, or with a false or unlawful cause, can have no effect."
*895 "Art. 1895. The cause is unlawful, when it is forbidden by law, when it is contra bonos mores (contrary to moral conduct) or to public order."
Jurisprudence has established the rule that where the cause of a contract is forbidden by law, or is contrary to moral conduct or the public order, it is an absolute nullity which cannot be given effect by ratification, Lewis v. Boyce, 19 La.Ann. [459] 460 (1867); Ackerman v. Larner, 116 La. 101, 40 So. 581 (1906); Barnes v. Barnes, 155 La. 981, 99 So. 719 (1924); Sonnier v. Fris, 220 La. 1085, 52 So.2d 393 (1952); Smith v. Smith, 239 La. 688, 119 So.2d 827 (1960).
Counsel have found no cases dealing with the specific question of whether such unlawful contracts can be given effect through transaction or compromise under LSA-C.C. Articles 3071-3083. However, we conclude the rationale against ratification also applies to transaction or compromise. The law cannot give effect to a contract whose cause violates a prohibitory penal statute, whether the parties seek to do so by ratification or by compromise of threatened or pending litigation. For example, if the cause of the contract is to commit a crime, as it actually is in the present case, the law must refuse to give the agreement effect, even in an effort to prevent or bring to an end litigation. To hold otherwise would permit parties by compromise to violate a prohibitory penal statute.
Having concluded that the compromise agreement is of no effect, it is unnecessary for us to consider Placid's second and third assignments of error stated above.
Since the Copeland mineral deeds are void and can be given no effect under the compromise agreements, it follows that Copeland acquired no mineral interest in the subject property, that there were no such mineral interests leased to Placid for a ¼th royalty, and that Mrs. Betty Beason owns no mineral interest or royalties. The Taylor heirs are the owners of all of the minerals in dispute in this concursus proceeding, and these minerals are subject to the 1/8th royalty leases which the various Taylor heirs have signed and are now owned by Placid.
As amongst the Taylor heirs, their ownership of the minerals in dispute is set forth in plaintiff's exhibits 18, 19 and 20, which are attached to and made a part of this decision.
The Taylor heirs own the royalties on deposit in the registry of the court and those to be disbursed in the future under Placid's leases in the proportions shown on the attached exhibits. All funds deposited in the registry of the court in excess of those necessary to pay 1/8th royalty must be reimbursed to Placid.
For the reasons assigned, the judgment of the district court is amended so as to provide that the mineral royalty interests in Tracts 58 and 59 are owned by the Taylor heirs in the proportions set out in plaintiff's exhibits 18, 19 and 20 which are attached hereto and made a part hereof. That part of the judgment which gives effect to the compromise agreements between certain of the Taylor heirs and Mrs. Betty Beason is reversed and set aside. That part of the judgment which recognizes Mrs. Betty Beason as owner of a part of the mineral royalty interest in dispute is reversed and set aside. All royalties on deposit in the registry of the court and those to be distributed in the future shall be disbursed under Placid's leases from the Taylor heirs which provide for a 1/8th royalty. All royalties on deposit in the registry of the court in excess of those necessary to pay the 1/8th royalty shall be reimbursed to Placid Oil Company. The provisions of the judgment as to the payment of costs are affirmed.
Reversed in part, amended and affirmed in part.
HOOD, J., dissents in part and assigns written reasons.

*896
 RECONCILIATION OF INTERESTS IN TRACT 58
 (E½ of NE¼ of NE¼ of Section 28-11N-6W)
Heirs of Amanda Demery Nash Taylor (died May, 1916, owning ½ interest as community property)
(Note: Interests shown are only those involved in concursus proceeding.)
 Fractional Interest Decimal Interestm
 Pearly Nash Demery 1/6 of ½ or 6/72 .0833333
 Edna Taylor Morgan 1/6 of ½ or 6/72 .0833334
 Pap C. (Caison) Taylor 1/6 of ½ or 6/72 .0833333
 Delores Ann Wardell Blackwell 1/6 of 1/6 of ½ or 1/72 .0138889
 Essie Mae Wardell Blackmon 1/6 of 1/6 of ½ or 1/72 .0138889
 Dorothy Mae Wardell Dorsey 1/6 of 1/6 of ½ or 1/72 .0138889
 Ora Lee Wardell 1/6 of 1/6 of ½ or 1/72 .0138888
 ________
 .3055555
Watson Taylor and wife Nancy Williams Taylor ½ community interest
 Nancy Williams Taylor
 (community interest in own right) ½ of ½ or 18/72 .2500000
 Nancy Williams Taylor
 (inherited from Watson Taylor, IF
 he left no descendants) ½ of ½ or 18/72 .2500000
 _____ ________
Total Tract 58: 58/72 .8055555
 PLACID EXHIBIT
 NO. 18

*897
 RECONCILIATION OF INTERESTS IN TRACT 58
 (W½ of NE¼ of NE¼ of Section 28-11N-6W)
Heirs of Amanda Demery Nash Taylor (died May, 1916, owning ½ interest as community property)
(Note: Interests shown are only those involved in concursus proceeding.)
 Fractional Interest Decimal Interest
 Pearly Nash Demery 1/6 of ½ or 66/792 .0833333
 Edna Taylor Morgan 1/6 of ½ or 66/792 .0833333
 Pap C. Taylor 1/6 of ½ or 66/792 .0833334
 Delores Ann Wardell Blackwell 1/6 of 1/6 of ½ or 11/792 .0138889
 Essie Mae Wardell Blackmon 1/6 of 1/6 of ½ or 11/792 .0138889
 Dorothy Mae Wardell Dorsey 1/6 of 1/6 of ½ or 11/792 .0138889
 Ora Lee Wardell 1/6 of 1/6 of ½ or 11/792 .0138888
Heirs of Rafe Taylor (died December, 1939, owning ½ interest as community property)
(Note: Interests shown are only those involved in concursus proceeding.)
 Alex Taylor 1/11 of ½ or 36/792 .0454545
 Watson Taylor 1/11 of ½ or 36/792 .0454545
 Ethel Moore Williams Shaw 1/11 of ½ or 36/792 .0454545
 Edna Taylor Morgan 1/11 of ½ or 36/792 .0454546
 Pap C. (Caison) Taylor 1/11 of ½ or 36/792 .0454546
 Delores Ann Wardell Blackwell 1/6 of 1/11 of ½ or 6/792 .0075758
 Essie Mae Wardell Blackmon 1/6 of 1/11 of ½ or 6/792 .0075758
 Dorothy Mae Wardell Dorsey 1/6 of 1/11 of ½ or 6/792 .0075758
 Ora Lee Wardell Evans 1/6 of 1/11 of ½ or 6/792 .0075757
 _______ ________
Total Tract 59: 446/792 .5631313
 PLACID EXHIBIT
 NO. 19

*898
 TRACT 59 (W½ of NE¼ of NE¼ of Section 28-11N-6W)
 COLLATERAL HEIRSHIP OF WATSON TAYLOR,
 A CHILD OF RAFORD TAYLOR AND SARAH THOMAS TAYLOR
 Interests inherited from Watson Taylor IF Watson Taylor died without descendants:
 MATERNAL LINE PATERNAL LIFE
 (½ × 1/22 = 1/44) (½ × 1/22 = 1/44) TOTAL DECIMAL
(1) Children of SERINA TAYLOR RAY, Deceased
 1. Electra Ray 1/6 × 1/6 × 1/44 1/6 × 1/10 × 1/44 32/1440 × 1/22 .0010101
 2. Idell Ray Williams 1/6 × 1/6 × 1/44 1/6 × 1/10 × 1/44 32/1440 × 1/22 .0010101
 3. Siretta Ray Johnson 1/6 × 1/6 × 1/44 1/6 × 1/10 × 1/44 32/1440 × 1/22 .0010101
 4. Oneito Ray Rivers 1/6 × 1/6 × 1/44 1/6 × 1/10 × 1/44 32/1440 × 1/22 .0010101
 5. Minerl Myrtle Ray (Levi) 1/6 × 1/6 × 1/44 1/6 × 1/10 × 1/44 32/1440 × 1/22 .0010101
 6. Eugene Ray 1/6 × 1/6 × 1/44 1/6 × 1/10 × 1/44 32/1440 × 1/22 .0010101
 (Fox Ray died without issue)
(2) Children of WILLIAM TAYLOR, deceased
 1. Phillip Taylor 1/11 × 1/6 × 1/44 1/11 × 1/10 × 1/44 16/1320 × 1/22 .0005509
 2. Felenard (Flenore) Taylor 1/11 × 1/6 × 1/44 1/11 × 1/10 × 1/44 16/1320 × 1/22 .0005509
 3. Henry Taylor 1/11 × 1/6 × 1/44 1/11 × 1/10 × 1/44 16/1320 × 1/22 .0005509
 4. Elmore Taylor 1/11 × 1/6 × 1/44 1/11 × 1/10 × 1/44 16/1320 × 1/22 .0005509
 5. Joe Nathan (Jonathan) Taylor 1/11 × 1/6 × 1/44 1/11 × 1/10 × 1/44 16/1320 × 1/22 .0005510
 6. Rafe Taylor 1/11 × 1/6 × 1/44 1/11 × 1/10 × 1/44 16/1320 × 1/22 .0005510
 7. Nathaniel Taylor 1/11 × 1/6 × 1/44 1/11 × 1/10 × 1/44 16/1320 × 1/22 .0005510
 8. Sweeney Taylor 1/11 × 1/6 × 1/44 1/11 × 1/10 × 1/44 16/1320 × 1/22 .0005510
 9. Edde Taylor 1/11 × 1/6 × 1/44 1/11 × 1/10 × 1/44 16/1320 × 1/22 .0005510
 10. Betty Jean Taylor 1/11 × 1/6 × 1/44 1/11 × 1/10 × 1/44 16/1320 × 1/22 .0005510
 11. Tennessee (Lizzie) Taylor 1/11 × 1/6 × 1/44 1/11 × 1/10 × 1/44 16/1320 × 1/22 .0005510
(3) ALEX TAYLOR 1/6 × 1/44 1/10 × 1/44 16/120 × 1/22 .0060606
(4) WATSON TAYLOR, deceased --- --- --- ---
(5) Children of HATTIE TAYLOR MOORE, deceased
 1. Ethel Moore Williams Shaw 1/6 × 1/44 1/10 × 1/44 16/120 × 1/12 .0060606
(6) TIMMIE TAYLOR 1/6 × 1/44 1/10 × 1/44 16/120 × 1/12 .0060606
(7) ROBERT TAYLOR 1/6 × 1/44 1/10 × 1/44 16/120 × 1/12 .0060606
 PLACID EXHIBIT
 NO. 20
 Page 1

*899
 (8) EDRICA (ED) TAYLOR - 1/10 × 1/44 1/20 × 1/22 .0022727
 (9) EDNA TAYLOR MORGAN - 1/10 × 1/44 1/20 × 1/22 .0022727
(10) PAP C. TAYLOR - 1/10 × 1/44 1/20 × 1/22 .0022727
(11) Children of CINTHA TAYLOR WARDELL, Deceased
 1. Delores Ann Wardell Blackwell - 1/6 × 1/10 × 1/44 1/120 × 1/22 .0003788
 2. Essue Mae Wardell Blackman - 1/6 × 1/10 × 1/44 1/120 × 1/22 .0003788
 3. Dorothy Mae Wardell Blackmon - 1/6 × 1/10 × 1/44 1/120 × 1/22 .0003788
 4. Ora Lee Wardell Evans - 1/6 × 1/10 × 1/44 1/120 × 1/22 .0003788
 5. Jerry L. Wardell - 1/6 × 1/10 × 1/44 1/120 × 1/22 .0003788
 6. Jimmy L. Wardell - 1/6 × 1/10 × 1/44 1/120 × 1/22 .0003788
 ____________ ________
 1/22 .0454545
 PLACID EXHIBIT
 NO. 20
 Page 2

*900 HOOD, Judge (dissenting).
I cannot agree with the conclusions reached by the majority. In my opinion the judgment appealed from is correct and should be affirmed.
My colleagues erred first, I think, in holding that the compromise agreements entered into between some of the Taylor heirs and Mrs. Betty Beason are null and void. I agree that a contract having as its cause something which is prohibited by law is void. The compromise agreements involved here, however, are not prohibited by law. They are not contrary to moral conduct or the public order. The cause or object of those agreements does not involve the unauthorized practice of law. Copeland is not a party to this suit, and the cause of the Taylor-Copeland contract is not the cause of the compromise agreements. The only issue presented here relates to the ownership of the property, or of the mineral rights on the property, from which Placid is obtaining production. Some of the defendants have entered into compromise agreements settling their disputes as to the title. The trial judge recognized those compromise agreements as being valid and he rendered judgment in accordance with those agreements. I think the majority erred in reversing that part of the trial court judgment.
In my opinion there is a serious question as to whether the obligations assumed by Copeland in that 1964 agreement constituted the practice of law. See LSA-R.S. 37:212; Strange v. Robinson, 189 So. 338 (La.App. 2 Cir. 1939); Meunier v. Bernich, 170 So. 567 (La.App.Orl.1936); Andrus v. Guillot, 160 So.2d 804 (La.App. 3 Cir. 1964); Medical Audit Service, Inc. v. Martinez, 215 So.2d 160 (La.App. 3 Cir. 1968); Aycock v. Miller, 18 So.2d 335 (La.App. 2 Cir. 1944). The question of whether that contract was contra bonos mores was before the trial court solely because that court had to determine whether the consideration for each of the two 1964 mineral deeds to Copeland was valid. That issue is not before us on this appeal, however, for two reasons, both of which will be discussed later in the opinion.
Although the above mentioned issue is not before us on this appeal, a serious legal question was presented in the trial court as to whether Copeland acquired a valid title to the mineral rights in 1964. Since that title question did not involve anything which is contrary to public policy, I know of no reason why the parties should not be permitted to settle their differences amicably. It seems illogical to me to hold that as to that one issue the parties cannot compromise, but must have the matter determined by the court.
Placid Oil Company acknowledged in its original and supplemental petitions, and in all of the pleadings which it filed in the district court, that it owes royalties under several oil, gas and mineral leases, including the lease which was executed in its favor by Mrs. Beason's author in title. It deposited in the Registry of the Court the sum it felt was due as royalties under those leases, and it prayed that upon deposit of that amount it be relieved and discharged from liability to the defendant lessors with respect to all of the deposited funds. It deposited the proceeds of ¼ of all of the oil, gas and minerals produced from the Beason property, in accordance with the provisions of the lease executed by Mrs. Beason's author in title. Placid has never alleged, and it never contended in the trial court, that the two 1964 conveyances of mineral rights to Copeland were null, or that there was a defect of any kind in the title of Mrs. Beason. On the contrary, Placid argued specifically in the trial court that Mrs. Beason acquired a valid title through Copeland.
More than thirty defendants were named in the suit. Practically all of them were lessors, or the heirs or assignees of lessors, of the subject property. Nine of those defendants filed answers alleging that the two 1964 documents purporting to convey mineral rights to Copeland were null and *901 void, primarily because of fraud and misrepresentation on the part of Copeland, but also because the consideration was illegal in that Copeland's obligations constituted the unauthorized practice of law. Mrs. Beason had acquired her title through Copeland, so the above mentioned answers created an issue between nine of the Taylor heirs, on the one hand, and Mrs. Beason, on the other, as to whether Mrs. Beason had a valid title to the part of the property claimed by her. No such issue was raised between Mrs. Beason and the other defendants or between Mrs. Beason and Placid. While the suit was pending, Mrs. Beason entered into five separate compromise agreements with the nine Taylor heirs who had attacked her title in their answers, and with three other such heirs, which agreements purport to settle the above mentioned disputes as to the title of the property.
Each of the five compromise agreements contained the following statement:
". . . the parties are cognizant of the uncertainty of litigation and desire to enter an agreement among themselves, regardless of the outcome of the aforementioned concursus proceeding, and they make the following agreement. . ."
One of the above mentioned agreements, entered into by four of the Taylor heirs and Mrs. Beason, stipulated that those heirs ratified and confirmed the two mineral deeds which had been executed in favor of C. C. Copeland in 1964. The parties did not agree to ratify or confirm the contract which was entered into between some of the Taylor heirs, or their ancestors, and Copeland on April 3, 1964, in which Copeland agreed to clear defects in the title. The compromise agreement then provided that those Taylor heirs were to be paid all of the royalties which would have accrued to them up to a specified date had they fully prevailed in the concursus proceeding, and that all royalties accruing thereafter were to be paid to Mrs. Beason. The agreement thus related solely to the distribution of the funds which had been deposited and those which thereafter would be paid by Placid. It did not purport to set out the specific mineral interest which was owned by each of the parties to that agreement.
The four additional compromise agreements, entered into by eight other Taylor heirs and Mrs. Beason, made no reference at all to the Copeland transactions, and there is no stipulation in any of those agreements which purports to ratify a Copeland transaction or any other contract. Those compromise agreements set out the agreement of the parties as to the interest in the accrued and future royalties which each was to receive from Placid Oil Company and the mineral royalty interests owned by each in the leased property.
I cannot agree with the majority's statement that each of the compromise agreements "purports to ratify the Copeland mineral deeds and contract." The Copeland contract is the only document which is alleged to be null as being against public policy. None of the compromise agreements purports to ratify that contract. Only one of the five compromise agreements purports to ratify the two Copeland mineral deeds, and even that agreement related only to the funds which had been or would be paid by Placid.
In my opinion all of the compromise agreements entered into between twelve of the Taylor heirs and Mrs. Beason are valid and were properly recognized and enforced by the trial court.
I feel that may colleagues committed a second error in assuming that this court has jurisdiction to decree, and in actually holding, "that Mrs. Betty Beason owns no mineral interests or royalties" and that "the Taylor heirs are the owners of all of the minerals in dispute in this concursus proceeding."
The issues presented at the trial relating to the ownership of mineral rights were *902 solely between Mrs. Beason and some of the Taylor heirs. The trial court properly determined those issues. The determination was based on compromise agreements as to some of the defendant lessors and on the law and facts as to the other lessors. Neither Mrs. Beason nor the Taylor heirs appealed from the trial court judgment, and I think that judgment is now final insofar as it sets out the proportion of the minerals which are owned by Mrs. Beason and by each of the Taylor heirs.
The only issue which Placid conceivably could have urged in the trial court or on appeal, I think, is whether the royalty payments owed by it should be reduced from one-fourth to only one-eighth of the production from the Beason property. I do not believe that Placid has the right on this appeal to go further and to demand that the respective property interests of all of the defendants-appellees be changed and re-arranged, contrary to the judgment of the trial court and in direct violation of the specific agreements of several of the claimants as to their interests. Placid's recourse should be limited to a determination of the proportion of the total production which it must pay to all lessors as royalties under the existing leases. It should be of no concern to Placid how those payments are to be divided among the various lessors. In my opinion the majority erred in rendering judgment on this appeal, taken only by Placid, stripping Mrs. Beason, an appellee, of the interest in the subject property which had been awarded to her by the trial court, and awarding that interest to other defendants, who also did not appeal and have not sought any such modification of the judgment.
A third error committed by my colleagues, I think, is in failing to hold that Placid is estopped from attacking Mrs. Beason's title to any of the property or minerals involved in this suit.
As was pointed out earlier, Placid has never alleged and it did not contend at any time in the trial court that Mrs. Beason's title was defective. Placid's position in the trial court, on the contrary, was that Mrs. Beason had acquired a valid title to the property claimed by her through the Copeland mineral deeds. Placid's position was so firm in that respect that Mrs. Beason did not file a brief in the trial court, but instead she adopted the arguments which had been made by Placid in her behalf.
After written reasons for judgment were handed down by the trial judge, Placid filed a motion "to amend written opinion of court," in which it sought primarily to have the decision of the trial court amended to decree that all of the property, including that owned by Mrs. Beason, was subject to mineral leases providing for one-eighth instead of one-fourth royalties. In that pleading Placid observed that "the court has ferreted out the law of the case" and that "the court has supplied the plea of nullity." It conceded that the compromise agreements entered into between Mrs. Beason and nine of the Taylor heirs were valid, but it contended that Mrs. Beason "acquired" the mineral interests allotted to her in those compromise agreements by virtue of those agreements and that her acquisition of them became effective on the dates those agreements were signed. It took the position that since Mrs. Beason did not acquire the interests accorded to her by the compromise agreements until 1973, when those agreements were signed, she acquired her mineral interests subject to the leases which had been executed earlier by the Taylor heirs providing for 1/8 royalty payments. On those allegations Placid prayed that the opinion of the trial court be amended so as "to recognize Placid's maximum obligation is to pay 1/8 royalties based upon the conveyances (not ratifications) contained in the compromise agreements . . . and to return to Placid one-half (½) of the funds deposited by it in the registry of the court . . ."
With reference to the validity or effectiveness of the compromise agreements, *903 Placid alleged in those pleadings in the district court:
"That is not to say that the individuals concerned cannot compromise their differences and enter into new arrangements consistent with the law . . ."
". . . any mineral rights acquired by Mrs. Beason from the Taylor heirs in this year 1973 as a result of the conveyance in the compromise agreements must be acquired subject to the Placid leases from the Taylor heirs . . . providing for only a 1/8 royalty."
"Mrs. Beason must take her mineral interest subject to the Taylor heirs leases providing for only a 1/8 royalty."
"When Mrs. Beason finally acquired mineral rights from the Taylor heirs in the year 1973, she did not acquire free and unencumbered rights."
Mrs. Beason resisted Placid's demand that the trial court's opinion be amended by reducing the royalties due her from ¼ to 1/8. The trial court modified its decree to some extent in response to Placid's motion, but it rejected Placid's demand that the royalties owed by it to Mrs. Beason be reduced to 1/8. Placid appealed from that judgment.
It is apparent, therefore, that Placid never at any time attacked Mrs. Beason's title in the trial court. It took a position favorable to her until after judgment was rendered by the trial court, and then in the above mentioned motion it still contended, consistent with the trial court judgment, that Mrs. Beason acquired interests in the property by means of the compromise agreements, its only contention being that she was entitled to 1/8 instead of ¼ royalties on her part of the property. When Placid appealed, it seems to me that the only issue presented on appeal was whether the royalty on Mrs. Beason's property should be reduced from ¼ to 1/8.
Placid argues for the first time on this appeal that Mrs. Beason did not acquire title by virtue of the compromise agreements. Its argument on this appeal, however, is that those agreements were invalid because they had not been signed by all parties at interest, that is, they had not been signed by Copeland, by all of the intervening assignees of Copeland, by Placid and by the other 20 Taylor heirs. That argument has never been made before by anyone, and it is directly contrary to all of the allegations and arguments of Placid in the trial court. I think there is no merit to that argument, but even if there should be some merit to it, I think Placid is now estopped from asserting it at this point. All through the trial court and up to this time, Placid has agreed with Mrs. Beason as to her ownership. She relied on that representation to the extent that at least at one point she did not file a brief but adopted Placid's arguments. If my colleagues feel that Placid should be permitted to make that argument now, and that there is some merit to it, then I believe that the case at least should be remanded to give Mrs. Beason an opportunity to meet this new issue.
A fourth error made by the majority, I think, is in permitting Placid, the lessee, to attack the title of Mrs. Beason, the lessor. The law is settled that a lessee who is in possession of the leased premises has no right to contest the title of his lessor. Sabine Lumber Company v. Broderick, 88 F. 2d 586 (C.C.A. 5 Cir. 1937); Nabors Oil & Gas Company v. Louisiana Oil Refining Company, 151 La. 361, 91 So. 765 (1921); Wiley v. Davis, 164 La. 1090, 115 So. 280 (1927); Gulf Refining Company v. Hayne, 138 La. 555, 70 So. 509 (1915); Rives v. Gulf Refining Company, 133 La. 178, 62 So. 623 (1913).
In this instance Mrs. Beason's author in title executed an oil, gas and mineral lease in favor of Placid providing for ¼ royalties. Placid accepted that lease, and it has been in possession of the leased premises since that time. It is currently obtaining production from the leased property, and its possession has not been disturbed. Under those circumstances, I think my colleagues *904 erred in permitting Placid to attack the title of its lessor.
The lease from Mrs. Beason's author in title to Placid was executed in 1965. Placid thus has had undisturbed possession of the leased property for almost nine years, and has obtained production from that property during that time. If Placid should have held no lease affecting that property other than the one executed by Mrs. Beason's ancestor in title, and Placid then sought to avoid its obligations under that lease by attacking the lessor's title after reaping substantial benefits from the leased premises, I feel certain that my colleagues would apply the existing law and would not permit Placid to make such an attack on the lessor's title. I do not believe that a different rule should be applied simply because Placid had some other cover leases. Placid accepted a lease from Mrs. Beason which provided for ¼ royalties. It took possession of that property and has remained in possession for several years. After obtaining production from the leased premises during that time, it now seeks to avoid the obligation which it assumed under the lease, and my colleagues have permitted it to do so to the great financial advantage of Placid. The majority has not only relieved Placid of its obligation from future production, but it also has ordered that a substantial portion of the royalties which Placid has already deposited and has admitted owing be returned to Placid. I cannot agree.
Finally, I think the majority erred in reducing the royalties owed by Placid to 1/8 and returning the balance of the amount deposited to Placid.
The majority's reasoning is that since Mrs. Beason's author in title never owned the property, there was never a valid lease providing for ¼ royalty.
The oil, gas and mineral lease from Mrs. Beason's author in title to Placid was valid. There has been no attack on that lease as being against public policy or as being invalid for lack of consideration. The only question which has ever been raised is whether the lessor owned the property when the lease was executed. That is the question which is being litigated here, and I think it was correctly resolved by the judgment of the trial court which recognized the compromise agreements.
I do not agree with Placid's argument that Mrs. Beason "acquired" her interest in 1973 when the compromise agreements were entered into. I believe that those agreements settled the question of what interests she acquired from her author in title, and thus what interests her authors owned when they leased the property to Placid. When that issue was settled the lease executed by her author in title, providing for ¼. royalty, applied to that interest.
For these reasons, I respectfully dissent from the views expressed by the majority.