306 So.2d 664 (1975)
PLACID OIL COMPANY, Plaintiff-Appellant-Respondent,
v.
Watson TAYLOR et al., Defendants-Appellees (Defendant Mrs. Betty Beason, Relator).
No. 54787.
Supreme Court of Louisiana.
January 20, 1975.
Sam Nelken, C. R. Whitehead, Jr., Whitehead & McCoy, Natchitoches, for defendant-applicant.
Armand A. Gutierrez, Dallas, Tex., Herschel M. Downs, Shreveport, for plaintiff-appellant-respondent, Placid Oil Co.
*665 Daniel T. Murchison, Watson, Murchison, Crews & Arthur, Natchitoches, for defendants-respondents.
Silas B. Cooper, Jr., Cooper & Sonnier, Abbeville, for amicus curiae.
TATE, Justice.
A mineral lessee attempts to evade royalty liability under a lease by contending that a conveyance in its lessor's chain of title is an absolute nullity. Without reaching the issue of whether a mineral lessee can attack the title of its lessor, we hold that such absolute nullity is not shown.
This is a concursus proceeding. La.C. Civ.P. art. 4651 et seq. Placid Oil, as mineral lessee, deposits into court royalties accruing on two 20-acre tracts and impleads claimants under two sets of titles: the Taylor heirs (35 of these claimants), the owners of the land; and Mrs. Betty Beason, who claims to own the entire mineral interest (servitude) affecting some of the land. Following suit, Mrs. Beason compromised with 12 of the Taylor heirs their competing claims to her interest (which were founded on the contention that their transfer (the Copeland deeds) to her ancestors in title was a nullity).
The trial court judgment recognized these compromise agreements. It allocated the accrued and future royalties in accordance with them, as between the compromising heirs and Mrs. Beason.
However, as between the non-compromising heirs and Mrs. Beason, the trial court held that Mrs. Beason owned no minerals as to their interest in the land because her title was founded upon an absolute nullity, the Copeland deeds (to be discussed below). It therefore recognized the ownership of the non-compromising Taylor heirs to the minerals under the land inherited by them, since the Copeland deeds (under this holding) had not divested them of title.
The trial court's judgment, entered in accordance with its reasons, fixed the proportionate royalty interest of Mrs. Beason and the Taylor heirs in the accrued and future royalties. Neither Mrs. Beason nor the Taylor heirs appealed from this judgment. As between them, therefore, the judgment is res judicata insofar as fixing their respective proportions of royalty ownership.
However, Placid Oil appealed. Placid Oil's chief complaint is that, as to the interest of Mrs. Beason and the compromising Taylor heirs, the trial court had recognized the Johnson lease (granted by Mrs. Beason's predecessor in title). By the terms of this lease, Placid Oil had agreed to pay ¼th royalties on the Taylor land. Placid Oil desires, instead, to pay the 1/8th royalties provided by the leases taken directly from the Taylor heirs.
On the appeal to the intermediate court, Placid Oil successfully contended that, since the Copeland mineral deeds were an absolute nullity, likewise void were: the intervening conveyances culminating in Mrs. Beason's acquisition of the Copeland mineral interest; the mineral lease to Placid executed by Johnson (who had acquired from Copeland's vendee and who was Mrs. Beason's immediate predecessor in title); and the Beason-Taylor compromises which fixed the interest of Mrs. Beason and the compromising heirs in the royalties. 291 So.2d 892 (La.App.3d Cir. 1974). The decision therefore held that Placid Oil's liability for royalties was limited to the 1/8th taken provided by the Taylor leases, and that Mrs. Beason owned no interest whatsoever.
We granted certiorari, 294 So.2d 832 (1974), primarily to consider whether Placid Oil's appeal could alter, as between Mrs. Beason and the Taylor heirs, ownership proportions fixed by a final court judgment; as well as to determine whether Placid Oil, a mineral lessee, can continue to attack the title of Mrs. Beason, its lessor, after by her compromise with other claimants there is no longer any conflicting claim as between lessor interests, cf., Gulf *666 Refining Co. v. Glassell, 186 La. 190, 171 So. 846 (1936) and Official Revision Comment, La.R.S. 31:121 (1974) of the new Mineral Code.
We do not reach these issues, however, because, preliminarily, we reject the foundation of Placid Oil's appeal, its claim that the record shows the Copeland mineral deeds to be absolute nullities (and thus allegedly permit an attack upon all subsequent conveyances and leases in the chain of title, and the compromises founded thereupon).
By these two 1964 deeds, the Taylor heirs conveyed to Copeland their entire mineral interest in certain described property. The consideration listed is ten dollars and other valuable consideration. A contract recorded at the time shows, however, the major part of the consideration was to be services by Copeland in removing clouds upon the title.[1]
A majority of the court of appeal held the contract for services to be invalid on its face, as an agreement by a non-lawyer to perform legal services contrary to a prohibitory law. La.R.S. 37:212, 37:213. The court therefore held the mineral deeds to be absolute nullities, since their cause is forbidden by law.
We are unable to agree that, under the present record, the Copeland mineral deeds are absolute nullities, nor that, on the face of the recorded title, they are shown to have had an illegal cause. See Strange v. Robinson, 189 So. 338 (La.App.2d Cir. 1939).
The contract indicates that there may be question as to whether some of the services to be performed by Copeland constitute the practice of law. However, no evidence at all was introduced to show that, by reason of the contract, Copeland had actually performed any prohibited legal services. Nor can we say, for instance, that services performed by removing clouds from titles, such as locating heirs or having adverse claimants sign quitclaims prepared by lawyers, amount by themselves to the practice of law, so as to exclude non-lawyers from the useful functions historically performed by landmen.
That is, the deeds on their face show, at the most, that they might have been subject to attack as nullities, if the simultaneously recorded contract for services be taken into consideration. Strange v. Robinson, 189 So. 338 (La.App.2d Cir. 1939). Their absolute nullity is not proved.
We are therefore unable to annul the rights of the third parties, such as Mrs. Beason (and Johnson, her predecessor who executed the lease in favor of Placid Oil), who so far as the record shows acquired in good faith the mineral interest conveyed by some of the Taylor heirs by the 1964 Copeland *667 deeds. Also, the compromise cannot be rescinded on the ground of the nullity of the title upon which based, for the parties expressly compromised the nullity as permitted by law. Civil Code Article 3080; Sharp v. Knox, 4 La. 456 (1832). Thus, the nullity of neither the Copeland deeds, the Johnson lease, nor the Beason-Taylor compromises was shown.
The court of appeal was therefore in error in depriving Mrs. Beason of her royalty interest as recognized by the valid compromise. (Of course, as to the non-compromising Taylor heirs, the judgment of the trial court is final insofar as depriving her of any royalty share in their interest in the land.)
This being so, we do not reach the issues of interest to us at the time certiorari was granted. Nor do we reach other contentions, such as:
(1) May a third person attack as a nullity an agreement (the Copeland deeds) to which they are strangers? See, e.g., Aubry and Rau, 1 Civil Law Translations (Obligations) Section 347(3), p. 345 (1965); Ripert et Boulanger, Traite de Droit Civil, Volume 2, p. 265 (1957) ("We must refuse to third persons who remain strangers to one or the other party the right to attack a contract on the ground of nullity.") These French authorities rely upon Article 1165 of the French Civil Code[2], which article is not found in the 1825 and subsequent Louisiana Civil Codes. However, it was found in Louisiana's 1808 code (p. 270, article 65), and the only reason it was not carried over into the 1825 code was that the jurisconsults felt to be self-evident the principle expressed. See Projet of Civil Code of 1825, 263 (La.Legal Archives 1937).
(2) Again, even assuming the original mineral deeds to be absolute nullities, may the compromise entered into by the grantee's successors in title be set aside because of this original nullity? See Planiol et Ripert, Traite de Pratique, Vol. 11, p. 1035 ("The compromise is valid because the absolute nullity would leave subsist a natural obligation. The settlement of such an obligation by means of a compromise would be a lawful cause.") and p. 1026 ("A compromise between the victim and the person who committed a crime against him as to the severe effects of his crime is lawful.") (2d ed.1954).
If there were no other issue remaining in this case, we would simply reinstate the judgment of the district court. However, by the brief filed in the intermediate court, we find that Placid Oil, in the alternative, had urged that at least some of the Copeland heirs had executed a lease to it prior to the recordation of the Copeland deeds, so that (it is argued) as to the interest of these heirs (whether they compromised with Mrs. Beason or not) Placid's royalty liability could not exceed 1/8, as provided by such lease. As to this contention, we will follow our usual practice to remand to the intermediate court for consideration of those issues which have not been passed on by the prior courts, when resolution of them is necessary before entry of any final decree by us.

Decree
For the foregoing reasons, the judgment of the intermediate court is reversed, and this case is remanded to the court of appeal for further proceedings consistent with our opinion. The costs of the review in this court are to be taxed against the money deposited, La.C.Civ.P. art. 4659; all other costs to be determined on remand.
Reversed and remanded.
*668 BARHAM, J., concurs.
SUMMERS, J., dissents and assigns reasons.
SUMMERS, Justice (dissenting).
I agree with the decision of the Court of Appeal, limited to the facts upon which that decision is based. See 291 So.2d 892. Therefore, I dissent from the opinion of this Court.
NOTES
[1] Pertinent provisions of the contract are:

"Whereas, the Taylor heirs state that they, as heirs of the aforementioned ancestors are, or should be the owners of certain properties in Natchitoches Parish, Louisiana, the title of which they are not certain of, and which might have clouds upon said titles, because of mineral reservations, or other defects, and
"Whereas, Copeland, because of his experience, knowledge and education believes that he can remove all clouds from the said titles, and agrees to use all diligence in his efforts to do so, AT HIS SOLE EXPENSE, and the decision as to the method of procedure, and whether or not to institute litigation shall be left entirely to the discretion of Copeland, and
"Whereas, the Taylor heirs have executed a certain Mineral Deed covering and affecting certain lands in Natchitoches Parish in the percentage of their full interest, and disposition of said mineral rights, and whether or not to execute an oil and gas lease covering and affecting the land described in said mineral deed shall be at the sole discretion of Copeland, and
"Whereas, The consideration shown upon the said Mineral Deed is Ten Dollars and other considerations, it is understood and agreed that the major part of the consideration is the services rendered by Copeland in removing the clouds upon said title, and * * *"
[2] Article 1165 roughly translated provides:

"Agreements have no effect but between the contracting parties; they do not work injury to a third person, nor can they profit him except in the case provided for by article 1121."