325 So.2d 313 (1975)
PLACID OIL COMPANY, Plaintiff-Appellant,
v.
Watson TAYLOR et al., Defendants-Appellees.
No. 4453.
Court of Appeal of Louisiana, Third Circuit.
December 24, 1975.
Rehearing Denied January 28, 1976.
Writ Refused March 12, 1976.
*314 Herschel M. Downs, Shreveport, and Armand A. Gutierrez, Dallas, Tex., for plaintiff-appellant.
Whitehead & McCoy by Charles R. Whitehead, Jr., Sam Nelken and Watson, Murchison, Crews & Arthur by Daniel T. Murchison, Natchitoches, for defendants-appellees.
Before HOOD, CULPEPPER, MILLER, DOMENGEAUX and WATSON, JJ.
HOOD, Judge.
This is a concursus proceeding instituted by Placid Oil Company to determine the ownership of certain mineral and royalty interests in two 20-acre tracts of land in Natchitoches Parish.
We decided the case originally on March 12, 1974. See Placid Oil Company v. Taylor, 291 So.2d 892 (La.App.1974). The Supreme Court granted certiorari (294 So.2d 832), and thereafter it reversed our decision, but remanded the case to us for determination of an issue which we did not consider when the case was before us originally. 306 So.2d 664 (La.1975). The issue presented on the remand was argued before a panel consisting of three judges of this court, and that panel rendered judgment deciding that issue on May 5, 1975. 313 So.2d 626 (La.App.1975). The Supreme Court then remanded the case to us for re-argument under Article V, Section 8, of the Constitution of 1974. 318 So.2d 40 (La.1975). The matter has been reargued before a panel consisting of five judges, and it is before us now for determination of the same issues which we attempted to resolve on May 5, 1975.
The facts are set out in the earlier opinions which have been rendered by this court and by the Supreme Court. We refer to those opinions for a detailed statement of most of the pertinent facts.
The sole issue presented here is whether Placid, as lessee, is obligated to pay royalties of one-eighth or royalties of one-fourth of the oil and gas produced from the leased property, insofar as that production may be attributed to the mineral interests formerly owned by Watson Taylor and Pap C. Taylor.
We held in the opinion which we rendered on May 5, 1975 (313 So.2d 626, La. App.) that the royalty liability of Placid did not exceed one-eighth of the production from the above mineral interests. After reconsidering the matter, however, we have decided that we erred in reaching that conclusion. We now conclude that Placid, instead, is obligated to pay royalties amounting to one-fourth of all of the oil and gas produced from the leased premises, including the production which may be attributed to the mineral interests formerly owned by Watson Taylor and Pap C. Taylor.
Watson Taylor executed an oil, gas and mineral lease in favor of Placid on March 19, 1964, covering the mineral interests then owned by the said Watson Taylor in one of the 20-acre tracts of land (Tract 58) involved in this suit. Another oil, gas and mineral lease was executed by Watson Taylor, Pap C. Taylor and Robert Taylor in favor of Placid on the same date, March 19, 1964, covering the mineral interests then owned by said lessors in the other 20-acre tract of land (Tract 59) involved here. Both of the above leases provided for the payment of royalties amounting to one-eighth of all oil and gas produced from the leased premises, and both of those leases were recorded in the Conveyance *315 Records of Natchitoches Parish on April 3, 1964.
Watson Taylor and Pap C. Taylor sold all of their mineral interests in the land affected by the above leases to C.C. Copeland, by mineral deed dated April 3, 1964. That mineral deed was recorded in the Conveyance Records of Natchitoches Parish on April 6, 1964, three days after the above leases were recorded. The printed form of that mineral deed provided that "This grant is subject to a mineral lease now affecting said lands. . . ." Even without that stipulation in the mineral deed, of course, the mineral interests affected by that deed would have been acquired by Copeland subject to the previously recorded leases from Watson and Pap C. Taylor to Placid. The mineral interests owned by Robert Taylor were not conveyed to Copeland and they are not involved in this litigation.
Copeland acquired additional mineral interests in the land involved in this suit, and on May 8, 1964, he sold all of the interests he had acquired, including the interests formerly owned by Watson and Pap C. Taylor, to L. M. Hudson. Hudson, in turn, sold all of the mineral interests he had acquired to Judge Jim Johnson on June 10, 1964. The printed form used in both of the above mineral deeds, to Hudson and to Johnson, contained the stipulation that "This grant is subject to a mineral lease affecting said lands. . . ."
On February 5, 1965, Judge Jim Johnson executed an oil, gas and mineral lease in favor of Placid, as lessee, covering all of the mineral interests then owned by Johnson in both of the above 20-acre tracts of land (Tracts 58 and 59), including the interests which he had acquired by mesne conveyances from Watson Taylor and Pap C. Taylor. At that time, of course, Johnson owned a substantially greater mineral interest in the leased property than that which he had acquired from Watson and Pap C. Taylor. The lease from Johnson to Placid provided that the lessee would pay royalties of one-fourth of all oil and gas produced from the leased property. There is nothing in that lease contract which refers to any other oil, gas and mineral lease affecting the land therein described. More specifically, the lease from Johnson to Placid, dated February 5, 1965, contains no reference to the prior leases from Watson Taylor and Pap C. Taylor to Placid, and there thus is nothing in the agreement between Johnson and Placid which could be construed as excepting the mineral interests formerly owned by Watson and Pap C. Taylor from the obligation of the lessee in the 1965 lease to pay royalties to the lessor, Johnson, of one-fourth of all of the oil and gas produced from the leased premises.
On July 2, 1966, Judge Jim Johnson sold and conveyed to Mrs. Betty Beason all of the mineral interests he owned in the two 20-acre tracts of land involved here. The printed form of that mineral deed contained the usual provision that "This grant is subject to a mineral lease now affecting said lands. . . ." By that mineral deed, therefore, Mrs. Beason became the owner of all of the mineral interests theretofore owned by Johnson, subject to any lease which affected those interests, and she thus acquired all of the rights which Johnson previously had, as lessor under any such lease. If Johnson was entitled to recover royalties of one-fourth of the production which could be attributed to the interests formerly owned by Watson and Pap C. Taylor, then Mrs. Beason is entitled to recover the same royalties from that production.
Mrs. Beason contends that the lease from Johnson to Placid, dated February 5, 1965, constituted a novation of the 1964 leases affecting the Watson and Pap C. Taylor mineral interests, and that Placid thus owes royalties amounting to one-fourth of the oil and gas produced from all of the mineral interests covered by the lease, including those acquired from Watson and Pap C. Taylor, as provided in the *316 later Johnson lease. Placid, on the other hand, contends that the 1965 lease was not a novation of the pre-existing leases, because there was nothing in the 1965 lease which showed an intention by the parties to extinguish the existing obligations.
In the judgment which we rendered on May 5, 1975, we concluded that the 1965 lease did not supersede or effect a novation of the 1964 leases, and that Placid thus owed royalties amounting to only one-eighth of the oil and gas produced from the original Watson and Pap C. Taylor interests.
The following articles of the Louisiana Civil Code are applicable:
"Art. 2185. Novation is a contract, consisting of two stipulations; one to extinguish an existing obligation, the other to substitute a new one in its place."
"Art. 2190. Novation can be made only by persons capable of contracting; it is not presumed; the intention to make it must clearly result from the terms of the agreement, or by a full discharge of the original debt."
Placid's principal argument, based on the cited articles of the Civil Code, is that the terms of the 1965 lease do not make it clear that the parties intended to extinguish the old leases and substitute the new one in their place, that novation cannot be presumed, and that the evidence thus fails to support a holding that the 1965 lease effected a novation of the previously existing leases.
The determining factor in deciding whether a novation has been effected is the intention of the parties. The intention to novate may be shown by the character of the transaction, and by the facts and circumstances surrounding it, as well as by the terms of the agreement itself. The burden of proof to establish novation is on the person who claims it. Antoine v. Elder Realty Company, 255 So.2d 625 (La. App. 3 Cir. 1971); Midlo & Lehmann v. Katz, 195 So.2d 383 (La.App. 4 Cir. 1967).
In Midlo & Lehmann v. Katz, supra, the Fourth Circuit Court of Appeal stated, appropriately, that:
"Since novation is never presumed, the burden of proof to establish novation is on the person who claims it; the determining factor is the intention of the parties to substitute a new obligation for the original one; only when this intention is present does the original obligation cease to exist; and such intention may be shown by the character of the transaction and the facts and circumstances surrounding the transaction, as well as by the terms of the agreement itself."
The provisions of LSA-C.C. art. 2190 are substantially the same as those contained in Article 1273 of the French Civil Code. Planiol makes the following observations relating to the French Code:
"`Novation is not presumed' says Art. 1273. It should not, therefore, be readily admissible by the court, and in case of doubt, it should maintain the old obligation as co-existing with the new one. However, the intention to effect a novation need not be mainfested in any special manner. It suffices, says Art. 1273, that such intention `result clearly from the act.' In general, one understands the word `act,' as used in this text, as meaning the contract effected, and not the writing which establishes it; it is not necessary, therefore, that the intention to novate be expressly declared in the writing; it can be tacit, and it can be implied from the nature of the contract made, or from the external circumstances." Planiol Civil Law Treatise, English Translation, Vol. 2, Part 1, No. 544, page 302.
The intent of Johnson and Placid in entering into the 1965 lease agreement conceivably could have been: (1) To extinguish the existing 1964 leases and to substitute the 1965 lease in their place, as contended *317 by Mrs. Beason; or (2) that the 1964 leases were to be continued in effect, with the 1965 lease covering only the additional mineral interests owned by Johnson over and above those which he acquired by mesne conveyances from Watson and Pap C. Taylor, all as contended by Placid; or (3) that the 1964 leases were to co-exist with the 1965 lease, with the result that the lessee owes royalties amounting to a total of three-eighths of the oil and gas production attributable to the Watson and Pap C. Taylor mineral interests.
No one suggests that the third or last conceivable interpretation should be placed on the transaction involved here, and neither do we. It seems to us, however, that this last conceivable interpretation is at least as logical as the one urged by Placid, particularly in view of Planiol's comment that "in case of doubt, it (the court) should maintain the old obligation as coexisting with the new one."
After considering the character of the transaction involved in the instant suit, the facts and circumstances surrounding it, and the terms of the agreement itself, we have concluded that the parties intended to extinguish the existing 1964 leases from Watson and Pap C. Taylor to Placid, and to substitute in their place the 1965 lease executed by Johnson in favor of Placid. We believe now, contrary to the view we expressed in our last judgment, that a novation clearly was effected by the execution of the 1965 lease.
One important circumstance which prompts us to arrive at the above conclusion is that the 1965 Johnson lease was silent as to the prior existing leases. It is inconceivable, we think, that the parties would omit a reference to the 1964 leases, if they actually intended that the lessee was to pay only a one-eighth royalty on the production from the Watson and Pap C. Taylor mineral interests instead of the one-fourth royalty provided in the 1965 lease covering the same interests. The printed form of the lease contract executed by Johnson in favor of Placid in 1965 provided for the payment of a one-eighth royalty in the oil and gas produced from the leased premises. That lease, however, was accompanied by a separate letter from Placid to Johnson, also dated February 5, 1965, which reads:
"For all purposes please refer to the Oil, Gas and Mineral Lease which you executed on February 5, 1965, as Lessor in favor of Placid Oil Company as Lessee, covering and affecting the NE/4 of the NE/4 of Section 28, Township 11 North, Range 6 West, Natchitoches Parish, Louisiana.
"This letter will evidence the fact that we have agreed that wherever the words `one-eighth' appear in Article 3 of the aforementioned lease, they shall be deemed to be `one-fourth' just as though the latter words had been substituted for the former on the original lease form itself.
"Otherwise, the lease correctly reflects all terms and conditions upon which we have agreed."
Johnson also signed that letter, signifying that he accepted the terms or provisions set out in it. It is apparent that this letter agreement specifically refers to the 1965 lease, it describes the property covered by that lease, it provides that one-fourth royalties are to be paid, and no exception is made in that letter as to the production obtained or to be obtained from the Watson and Pap C. Taylor interests. The letter further recites, "Otherwise, the lease correctly reflects all terms and conditions upon which we have agreed." We believe some reference would have been made to the Watson and Pap C. Taylor mineral interests in that letter if the parties had intended that the one-fourth royalty provision did not apply to those interests.
Another fact which has influenced us is that at the time the 1965 lease was executed Johnson owned substantially more mineral rights in the 40-acre tract of land involved *318 here than those which had already been leased to Placid, that is, the Watson and Pap C. Taylor interests. We believe we are justified in assuming that it was to Placid's advantage to obtain a lease covering substantially more mineral interests in the leased property than it already had, and that that was an important consideration for its agreement to effect the novation and to pay the additional royalties on the interests which previously had been leased.
Considering these facts and the nature of the transaction, we are convinced that the parties intended to effect a novation in executing the 1965 lease.
Placid argues further, however, that the parties obviously did not intend to extinguish the 1964 leases, because such an extinguishment would have had the effect of releasing the Robert Taylor mineral interest. Robert Taylor was a lessor in one of the 1964 leases at issue here. He did not sell his interest to Copeland, and Johnson thus never acquired the mineral interest owned by him. All parties agree that the Robert Taylor interests are not involved in this proceeding. We cannot agree with Placid's argument that the lease of the Robert Taylor interest would be extinguished if the 1965 lease is held to constitute a novation. Since the Robert Taylor interest was never acquired by Johnson, it was not affected by the 1965 lease. The novation which resulted from the execution of the 1965 lease thus did not affect the Robert Taylor interest.
Our conclusion is that the leases from Watson Taylor and Pap C. Taylor to Placid Oil Company, dated March 19, 1964, and recorded on April 3, 1964, which leases provide for a one-eighth royalty, were extinguished and were superseded by the lease from Judge Jim Johnson to Placid Oil Company, dated February 5, 1965, providing for a one-fourth royalty. Placid's royalty liability as to all of the property covered by the 1965 lease, including the mineral interests formerly leased by Watson and Pap C. Taylor, thus is one-fourth of the oil and gas produced from the leased premises.
For the reasons herein assigned, the judgment which we rendered on May 5, 1975, is hereby rescinded and recalled, and judgment is hereby rendered affirming the judgment of the district court. All costs of this appeal, except those which the Supreme Court specifically taxed against the money deposited (See 306 So.2d 664, La.), are assessed to plaintiff-appellant, Placid Oil Company.
Our original judgment rescinded, and judgment of district court affirmed.
CULPEPPER, J., dissents for the reasons stated in the previous decision authored by him and rendered May 5, 1975.
MILLER, J., dissents for the reasons assigned by CULPEPPER, J.