345 So.2d 254 (1977)
PLACID OIL CO., Plaintiff-Appellee,
v.
Watson TAYLOR et al., Defendants-Appellants.
No. 5910.
Court of Appeal of Louisiana, Third Circuit.
April 13, 1977.
Rehearing Denied May 10, 1977.
Writ Refused July 1, 1977.
Clyde Lain, Jr., Monroe, for defendants-appellants.
Watson, Murchison, Crews & Arthur by R. Raymond Arthur, Natchitoches, for plaintiff-appellee.
Before DOMENGEAUX, GUIDRY and ROGERS, JJ.
GUIDRY, Judge.
This suit originally came before this court as a concursus proceeding instituted by *255 Placid Oil Company to determine the ownership of certain mineral and royalty interests in two (2) twenty acre tracts of land, located in Natchitoches Parish, Louisiana. Impleaded as adverse claimants to the contested interests were certain Taylor heirs, who originally owned the land, and Mrs. Betty Beason, who claimed to own certain mineral interests therein. Following our decision in this matter on March 12, 1974, 291 So.2d 892 (La.App. 3rd Cir., 1974), the Supreme Court, on May 31, 1974 granted a writ of certiorari, 294 So.2d 832 (1974). The Supreme Court, 306 So.2d 664 (1975), reversed our decision, and remanded the case to us for consideration of an issue which we had not previously passed upon. The issue presented on remand was argued and judgment was rendered deciding that issue on May 5, 1975, 313 So.2d 626 (La.App. 3rd Cir., 1975). Writs were again applied for and the Supreme Court again remanded the case for re-argument under Article V Section 8 of the Constitution of 1974. The matter was re-argued before a panel of five judges and judgment was finally rendered on December 24, 1975. 325 So.2d 313, writs refused, March 12, 1976, 329 So.2d 455 (1976).[1]
Following final disposition of this matter the trial court ordered that the $190,879.00, representing mineral royalties deposited in *256 the registry of the court by Placid Oil Company, be withdrawn and disbursed according to the dictates of the above referenced judgments.
On May 4, 1976 Nancy Williams Taylor, surviving spouse of Watson Taylor and one of the claimants in this matter, acknowledged receipt of $37,716.35, representing her royalty interest (36/72 of ¼) in one of the two twenty acre tracts covered by the Placid Oil Company lease. As provided in that acknowledgment Nancy Taylor's funds were to be distributed as follows:[2]
"1. Nine Thousand Four Hundred Twenty-Nine and 09/100 ($9,429.09) Dollars to Watson, Murchison, Crews & Arthur for legal services rendered in my behalf.
2. The sum of Three Thousand Five Hundred Fifty-One and 53/100 ($3,551.53) Dollars to Exchange Bank & Trust Company in payment of my note, which I hereby authorize my attorneys to pay.
3. The sum of Nine Thousand One Hundred Twenty-Two and 83/100 ($9,122.83) Dollars to be held by the Law Firm of Watson, Murchison, Crews & Arthur in escrow, or will be placed into the Registry of the Court; this sum being disputed between myself and Mr. and Mrs. James B. Johnson.
4. The sum of Fifteen Thousand Six Hundred Twelve and 90/100 ($15,612.90) Dollars paid to me in hand on this date."
On May 27, 1976, shortly following Nancy Taylor's acknowledgment, James B. Johnson and his wife, Nancy moved for a rule to show cause why Daniel Murchinson of the firm of Watson, Murchinson, Crews & Arthur, should not be ordered to release to them the sum of $9,122.83 held in escrow. The rule was subsequently amended naming both, Daniel Murchison and Nancy Taylor as respondents.
In their pleadings relators allege that on March 23, 1974, by instrument recorded in Natchitoches Parish in Conveyance Book 316, page 871, and passed before Daniel Murchinson, Notary Public, Nancy Taylor sold them twenty-two acres of land. The sale, which was in consideration of the sum of $2,000.00 cash did not convey any mineral interest in the property. The Johnsons allege that no minerals were conveyed because the Notary would not include the same in the act of sale. The Johnsons further alleged that on March 30, 1974, Nancy Taylor, by act of sale passed before Buford Grappe, Notary Public, sold all of her oil, gas and mineral rights in the above described tract of land to them. The sale which was in consideration of the sum of $100.00 cash was recorded in Conveyance Book 317, page 185 of the records of Natchitoches Parish.[3]
Based upon this latter instrument the Johnsons aver that Nancy Williams Taylor owes them the sum of $9,122.83, being that portion of the funds credited to the account of Nancy Williams Taylor in the concursus proceeding for the period from March 30, 1974 to the date of disbursement, less 25% attorneys fees.
Following the filing of the aforesaid rule and on July 16, 1976, Nancy Taylor filed a *257 petition for a declaratory judgment, praying that the instrument dated March 30, 1974, recorded in Conveyance Book 317, Page 185, records of Natchitoches Parish be rescinded, annulled and voided.[4] Petitioner admits that she did sign a document which purported to be a sale of oil, gas and other minerals to James and Nancy Johnson for the price of $100.00. Petitioner, however, alleges that the instrument is without effect because it was obtained by fraudulent means, conduct and practices on the part of James and Nancy Johnson. Petitioner alternatively alleges that the purported sale is null and void because it is lesionary. After filing an exception of prescription the Johnsons answered plaintiff's petition generally denying the allegations thereof. On August 13, 1973 a hearing was held on the claims set forth in the rule filed by the Johnsons and the petition for declaratory judgment filed by Nancy Taylor. The trial court awarded judgment in favor of the plaintiff, Nancy Williams Taylor, declaring that the instrument dated March 30, 1974, recorded in Conveyance Book 317, page 185, records of Natchitoches Parish was null and void. Accordingly, the trial court ordered that the funds held in trust by Daniel Murchinson, i. e., the sum of $9,122.83, be delivered to Nancy Williams Taylor. The trial court overruled the defendants exception of prescription.
Following the signing of the formal judgment the defendants filed a motion for a new trial and a motion to reopen the testimony. Defendants suggested that the matter should be reopened for the taking of additional testimony, namely that of Buford Grappe, the Notary Public before whom the annulled and voided sale was passed. A judgment was signed denying both motions.
Defendants James B. Johnson and Nancy Johnson appeal.
Defendants contend that the trial court erred when it held that the mineral deed from Nancy Taylor to James B. and Nancy Johnson was a nullity due to fraud and misrepresentation. Specifically, the defendants argue that the evidence presented is not clear and convincing proof that fraud or misrepresentation was present in procuring the signature of Nancy Taylor. Defendants also contend that the trial court erred when it did not, on its own motion, raise the exception of no cause of action since the pleadings filed by Nancy Taylor did not allege fraud and misrepresentation by particular acts. Presumably the defendants have abandoned their claim that plaintiff's action has prescribed since no mention is made of it in either brief or in argument before this court.
A review of the record indicates that shortly before March 23, 1974 (prior to the original litigation being finalized) Nancy Williams Taylor, James Bernard Johnson and Nancy Taylor Johnson went to the office of Mr. Daniel T. Murchinson in Natchitoches, Louisiana. Daniel Murchinson testified that the Johnsons at this time requested that an instrument be prepared by which Nancy Williams Taylor would convey some twenty acres of land to them.
We here observe that Nancy Taylor Johnson was the niece of Nancy Williams Taylor. Nancy Johnson's father was Pap Taylor, one of the claimants in the original action.
Murchinson testified that during this meeting with the Johnsons and Nancy Taylor the question of mineral rights was discussed. Daniel Murchinson, whose law firm had been representing Nancy Taylor for approximately 6 or 7 years, was totally familiar with the situation regarding the concursus proceeding. After reminding Nancy Taylor of the substantial amount of money on deposit in the court Murchinson stated that he advised her that the mineral rights should be excluded from the sale. Murchinson testified that Nancy Taylor agreed indicating that she wanted her niece and her niece's husband to have her money upon her death. Nancy Taylor had no forced heirs. Murchinson further advised plaintiff that a last will and testament would be the proper way to accomplish this. *258 Murchinson's testimony reflects that Nancy Taylor was in accord with the procedures he had outlined. Following this meeting Nancy Williams Taylor and the Johnsons returned to Murchinson's office on March 23, 1974 to execute the documents which he had prepared. Nancy Taylor signed the deed conveying her twenty two acres to the Johnsons. In this deed the vendor, Nancy Taylor, reserved all minerals underlying the property conveyed. At this same meeting Nancy Taylor executed her last will and testament which instituted James B. and Nancy Johnson as sole legatees.
One week later, on March 30, 1974, without the knowledge of Daniel Murchinson, Nancy Taylor executed an instrument by which she conveyed to James B. Johnson and Nancy Johnson all of her oil, gas, and mineral rights in the subject tract for the price of $100.00.
The testimony of Nancy Johnson was to the effect that her aunt, Nancy Taylor, definitely wanted the mineral rights to go with the property.[5] Nancy Johnson testified that, in accordance with her aunt's wishes, upon returning to her home in Monroe she contacted a lawyer who prepared a mineral deed covering the subject tract. Nancy Johnson and her husband then returned to Nancy Taylor's home in Campti, Natchitoches Parish, the following weekend with the prepared mineral deed. Nancy Johnson testified that at this time she read and explained the deed to her aunt. Thereafter, Nancy Johnson, and her husband, James, accompanied by Pap Taylor, her father, and Nancy Taylor went to the office of Buford Grappe, a Notary Public in the Parish of Natchitoches, where the instrument was signed by the parties. Buford Grappe did not testify at the trial of this matter.
The testimony of Nancy Taylor reveals that she did not intend to sell her mineral interest to her niece and her husband, but wanted them to have it upon her death. She indicated that she wanted to keep her money to provide for her needs.
The record indicates that Nancy Taylor is an elderly black woman 83 years of age. She has no formal education. She is barely able to read and write and has for some time done neither due to poor eyesight. Generally her inarticulate testimony revealed that she could not remember the circumstances surrounding the transactions involved herein. She testified that she did not know what her mineral interest was worth. She admitted, however, signing a paper for which she received $100.00.
Nancy Johnson admitted that her aunt, Nancy Taylor was a person who could be easily influenced. Mrs. Johnson also admitted that her aunt was not capable of reading a legal document and would need an explanation thereof. Nancy Johnson has a master's degree in speech as well as having earned 30 hours towards her doctorate in education.
We observe that although the original concursus proceeding had not been finalized at the time of the sale of the mineral rights, it was evident that no matter the outcome, whether the compromise agreement be recognized or the Taylor heirs deeds be recognized, and under whichever lease, be it the Beason or Taylor lease, Nancy Taylor was to receive a substantial sum of money. Nancy Johnson admitted she was apprised of the legal proceedings involving Nancy Taylor. Furthermore, Nancy Johnson's father, Pap Taylor, was also a claimant in these proceedings, and as such was regularly informed by the attorneys regarding the monies which had been deposited into the registry of the court.
In reviewing the testimony of Pap Taylor, we find noteworthy his statement concerning what happened on March 30, 1974 at Nancy Taylor's home. He explained (Transcript page 89):

"I was with my little Nancy, my daughter when we we went to Nancy W. Taylor's house. Then she asked Nancy W. *259 Taylor you know about buying the minerals there. Said you have it willed to us but now, I want to buy it. It won't be no difference. An she said, well it won't be no difference I'll sell it to you."

(Emphasis supplied).
The law of this state is unquestionably clear that a contract, the consent to which was obtained by fraud, is null and void. LSA-R.C.C. Article 1847. In order to ascertain whether or not a contract is vitiated by fraud, the evidence in support thereof must be evaluated in accordance with the provisions of LSA-R.C.C. 1848, which reads:
"Fraud, like every other allegation, must be proved by him who alleges it, but it may be proved by simple presumptions or by legal presumptions, as well as by other evidence. The maxim that fraud is not to be presumed, means no more than that it is not to be imputed without legal evidence."
The jurisprudence holds that fraud must be proven by evidence weighing well beyond the preponderance, that is strong, convincing evidence. National Bank of Bossier City v. Fornea, 272 So.2d 411 (La.App. 2nd Cir. 1973), writs refused March 1, 1973. Since the accusation is a grave one the courts have required strict proof thereof. Chrysler Credit Corporation v. Henry, 221 So.2d 529 (La.App. 4th Cir., 1969).
In applying the principles enunciated in R.C.C. Articles 1847 and 1848, and the jurisprudence interpretive thereof, we agree with the finding of the trial court that Nancy Williams Taylor was fraudulently induced into signing the mineral deed executed on March 30, 1974. There is no question but that in view of her age, physical infirmities, and lack of education, which were all well known to the Johnsons, the nature of the document presented to her was misrepresented. Nancy Taylor could not ascertain herself the nature or the ramifications of the document she signed, but relied solely upon the representations made by her niece, Nancy Johnson. Nancy Taylor obviously thought she was signing a document which would be no different from the testament which she had executed upon the advice of her attorney a week earlier. (See testimony of Pap Taylor quoted heretofore).
We find that the highly suspicious facts and circumstances surrounding the transaction on March 30, 1974, considered along with the testimony of Nancy Taylor and Pap C. Taylor and the events of the previous week, furnish clear and convincing proof that Nancy Taylor was fraudulently induced into signing the contested document. We therefore conclude, as did the trial court, that the mineral deed executed by Nancy Taylor on March 30, 1974 is null and void by reason of fraud. Chrysler Credit v. Henry, supra.
Defendants finally argue that plaintiff has failed to state a cause of action in that she has failed to allege fraud and misrepresentations by particular acts as required by LSA-C.C.P. Article 856. We find no merit in this contention. LSA-C.C.P. Article 856 provides:
"In pleading fraud or mistake, the circumstances constituting fraud or mistake shall be alleged with particularity. Malice, intent, knowledge, and other condition of mind of a person may be alleged generally."
To summarize, the plaintiff's petition alleges:
1. Petitioner shows that the sale of March 30, 1974 should be rescinded for reasons that it was obtained by fraudulent means and practices on the part of defendants.
2. Petitioner shows that defendants took advantage of her age, health and lack of education by persuading her to execute the document on March 30, 1974.
3. On March 30, 1974 defendants took plaintiff for a ride and told her that they would give her some money, but she would have to sign a paper for them in return. Petitioner did not know the contents of the paper, was not able to read, and it was not read to her. Petitioner simply trusting the defendants signed the document.
*260 Clearly the above acts alleged in plaintiff's petition set forth the circumstances constituting fraud with sufficient particularity as to satisfy the requirements of C.C.P. Article 856 and accordingly are sufficient to establish a cause of action for fraud against James B. Johnson and Nancy Johnson.
For the above and foregoing reasons the judgment appealed from is affirmed. All costs to be borne by the defendants-appellants, James B. Johnson and Nancy Johnson.
AFFIRMED.
NOTES
[1] Originally the trial court held that the Copeland mineral deeds (Betty Beason's ancestor in title), which were acquired from the Taylor heirs, were null and void since the major consideration therefor was Copeland's agreement to render legal services in violation of LSA-R.S. 37:213. A contract which was executed and recorded with Copeland's mineral deeds stated that the major consideration was services rendered by Copeland in removing clouds from the titles of the Taylor heirs. Copeland was not a lawyer. The trial court however, recognized Beason's title to the contested mineral rights giving effect to compromise agreements which had been executed between the Taylor heirs and Mrs. Betty Beason. While the suit was pending in the trial court Mrs. Beason entered into five separate compromise agreements with the nine Taylor heirs who had attacked her title. The compromise agreements provided that those Taylor heirs were to be paid all of the royalties which would have accrued to them up to a specified date had they fully prevailed in the concursus proceeding, and that all royalties accruing thereafter were to be paid to Mrs. Beason. The agreement related solely to the distribution of funds which had been deposited and those which thereafter would be paid by Placid. It did not purport to set out the specific mineral interest which was owned by each of the parties to that agreement.

We note that Placid Oil Company had mineral leases from both adverse claimants, Mrs. Betty Beason and the Taylor heirs. The mineral leases from the Taylor heirs provided for a 1/8 royalty whereas the lease of any mineral interest owned by Mrs. Beason provided for a ¼ royalty.
The trial court not only held that the Taylor heirs were to receive funds as per the compromise agreement but also determined that the Taylor heirs who were parties to the compromise agreements were entitled to a ¼th royalty under Mrs. Beason's lease rather than a 1/8th royalty under the leases previously executed by them.
From the trial court judgment only Placid Oil Company appealed. The other claimants neither appealed nor answered the appeal of Placid.
On appeal, 291 So.2d 892 (La.App. 1974), we agreed with the trial court that the Copeland deeds were null and void, however we reversed in part, finding that due to the nullity of these deeds the compromise agreements could not be given effect. We concluded that the Taylor heirs were owners of all of the minerals in dispute in this concursus proceeding and that the minerals were subject to the Taylor heirs' leases. The Supreme Court granted a writ of certiorari.
The Supreme Court, 306 So.2d 664 (1975) determined that the Copeland deeds were not nullities. The Supreme Court also found that the compromise agreements could not be rescinded on the ground of nullity of the title upon which they were based because the parties expressly compromised the nullity as permitted by law. The Supreme Court recognized both the validity of the Copeland deeds and the compromise agreements.
The case was remanded for consideration as to whether or not the Taylor heirs had leased their interest prior to recordation of the Copeland deeds, so that as to the interest of these heirs Placid's oil royalty liability would not exceed 1/8, as provided by such lease.
Upon remand, 313 So.2d 626 (La.App. 1975), we decided that the lease from Pap C. Taylor and Watson Taylor (deceased husband of Nancy Taylor Williams) to Placid Oil Company dated March 19, 1964 and recorded on April 3, 1964, which lease provided for a 1/8th royalty, must be given full force and effect, and consequently Placid's royalty liability, as to these mineral interests did not exceed 1/8.
The Supreme Court remanded the case to us for reargument under Article V, Section 8 of the Constitution of 1974. The matter was reargued before a panel of five judges (325 So.2d 313 (App.1975)), again the issue being whether Placid as lessee was obligated to pay royalties of 1/8th or ¼th of the oil and gas produced from the leased property, insofar as the mineral interests formerly owned by Watson Taylor and Pap C. Taylor were concerned. We reversed our prior decision and held that the mineral lease to Betty Beason's ancestor in title of February 5, 1965 superseded the leases executed by Pap C. Taylor and Watson Taylor on March 19, 1964. Accordingly Placid's royalty liability as to all of the property covered by the 1965 lease, including the mineral interests formerly leased by Watson and Pap C. Taylor was ¼th of the oil and gas produced from the leased premises. The Supreme Court denied writs, 329 So.2d 455 (1976).
[2] We note that as per the compromise agreement executed between Nancy Williams Taylor and Betty Beason, Nancy Taylor's interest was to terminate after payment was made from the registry of the court, such interest to be thereafter owned by Betty Beason.
[3] The mineral rights conveyed were subject to the Placid Oil Company leases which have been discussed in Footnote 1.
[4] Nancy Taylor admits that she sold to the Johnsons 22 acres of land by deed dated March 23, 1974. The validity of that sale is not at issue.
[5] James B. Johnson simply testified that his testimony would be the same as his wife, Nancy Johnson.