446 So.2d 954 (1984)
James B. EZELL, Plaintiff-Appellant,
v.
GENERAL MOTORS CORPORATION, Defendant-Appellee.
No. 83-521.
Court of Appeal of Louisiana, Third Circuit.
March 7, 1984.
Writ Denied April 23, 1984.
*955 Gaharan & Wilson, Donald R. Wilson, Jena, for plaintiff-appellant.
Hudson, Potts & Bernstein, Jesse D. McDonald, Monroe, Gold, Little, Simon, Weems & Bruser, Donald Sharp, Alexandria, for defendant-appellee.
Before FORET, DOUCET and YELVERTON, JJ.
FORET, Judge.
This is a suit in redhibition filed by plaintiff, James B. Ezell, seeking rescission of the sale of a 1980 Chevrolet pickup truck along with damages for personal injuries and attorney's fees. The defendants are General Motors Corporation, the manufacturer, and Windham Chevrolet Oldsmobile, Inc., the retail seller. Motors Insurance Company has intervened to recover all payments made to Ezell for property loss. Ezell alleges that a defect in the truck caused it to catch fire which resulted not only in the total destruction of the vehicle, *956 but also in personal injuries to his person. The issue on appeal is whether plaintiff carried his burden of proof in establishing the existence of a defect.
On July 16, 1980, Ezell purchased a new 1980 Chevrolet Fleetside pickup truck from his local dealer, Windham Chevrolet, for a price of $5,850. Three months later, on October 16, 1980, the truck caught fire and was totally destroyed. During this three-month period between the purchase and the fire, the truck was not mechanically altered in any manner.
Ezell claims that he was driving on Fish Market Road in Jena, Louisiana, at about 35 miles per hour when he noticed smoke beginning to pour into the cab from underneath the dashboard. Shortly thereafter, the engine went totally dead. After the truck stopped, Ezell attempted to exit from the cab by using the driver's door, but found it to be jammed. So, he then slid to the opposite end of the cab and exited through the passenger's door, and in doing so, fell violently to the ground, landing on his neck and shoulder.
Ezell further claimed that he got up from the ground and ran to the nearby home of Mr. and Mrs. Sherman Golden. Mrs. Golden telephoned the fire department after Ezell informed them of his plight. Unfortunately, the fire truck did not arrive for about forty-five minutes, and only after Mrs. Golden telephoned a second time. Attempts to stop the fire were in vain.
Ezell's truck was totally destroyed. In addition to the loss of the truck, he asserted that he was in the cab of the truck long enough to suffer severe smoke inhalation which has resulted in serious lung problems. Also, he claimed that the fall from the truck upon exiting resulted in a neck and shoulder sprain.
The defendants claim that the fire was due to arson, not to any defect in the manufacture or design of the truck. Also, they disputed Ezell's claim to damages for personal injuries.
The trial judge rendered judgment in favor of the defendants. His ruling was based on several findings of fact:
(1) He found that the testimony of Ezell was not credible.
(2) He found that the defendants' experts were better qualified than the plaintiff's.
(3) He found that the defendants' experts better tested and better examined the evidence than did the plaintiff's.
From the judgment dismissing his claims, Ezell has appealed.
Redhibition is defined by LSA-C.C. Article 2520, as:
"... the avoidance of a sale on account of some vice or defect in the thing sold, which renders it either absolutely useless, or its use so inconvenient and imperfect, that it must be supposed that the buyer would not have purchased it, had he known of the vice."
In order to establish a prima facie case, a buyer must show that a non-apparent defect existed at the time of sale. LSA-C.C. Articles 2520 and 2530; Jordan v. LeBlanc and Broussard Ford, Inc., 332 So.2d 534 (La.App. 3 Cir.1976). The evidentiary burden is that the proof must be more probable than not. Moreno's Inc. v. Lake Charles Catholic High Schools, Inc., 315 So.2d 660 (La.1975). He need not prove the underlying cause of the defect, but only that it existed. Gamble v. Bill Lowrey Chevrolet, Inc., 410 So.2d 1155 (La.App. 3 Cir.1981). The term "defect", as contemplated in Article 2520, means a physical imperfection or deformity; or a lacking of necessary components or level of quality. Williams v. Louisiana Machinery Company, Inc., 387 So.2d 8 (La.App. 3 Cir. 1980).
Once the plaintiff establishes his prima facie case, the burden shifts to the defendant to show that he can somehow escape liability[1]. Jordan v. Security *957 Company, 425 So.2d 333 (La.App. 3 Cir. 1982).
The trial judge did not, however, apply the normal "preponderance of the evidence" rule. Instead, he felt that the burden of proof rules as to fraud were applicable because, "The contentions by defendants that the fire was caused by an incendiary accellerant [sic] are in effect charges of fraud ...".
Because fraud is never presumed, the burden of proof in fraud cases is well beyond a preponderance; exceptionally strong proof is required. Placid Oil Company v. Taylor, 345 So.2d 254 (La.App. 3 Cir.1977), writ refused, 347 So.2d 261 (La. 1977). The defendants argue that the trial judge erred in applying this standard because it incorrectly placed the burden of proof upon themselves.
We do not, however, need to decide this issue because we agree with the trial judge that the defendants still prevail, even if the fraud standard is applied.
The record shows numerous inconsistencies in various statements made by the plaintiff. He changed his version of the story on several occasions when speaking with the various doctors who treated him. The plaintiff had also claimed injuries in the past on very unconvincing grounds. Finally, the expert and other eyewitness testimony did not correspond with the plaintiff's version.
Findings of fact regarding credibility must not be overturned unless clearly wrong. Bridges v. Reliance Insurance Company, 410 So.2d 1243 (La.App. 3 Cir. 1982). We cannot say here that the trial judge was clearly wrong in finding that the plaintiff was not a credible witness.
Plaintiff presented the testimony of Dr. Robert Newell, an expert in the field of electrical engineering. Dr. Newell's expertise was limited to that of electrical matters. His knowledge on the subject of origin of fires was based on his readings, attending of seminars, and engineering background. Dr. Newell opined that the fire was caused by a short in the positive battery cable. He could not, however, state whether the short caused the fire or whether the short came as a result of the fire.
The defendants' experts included Roland Bottiglia, who has had extensive experience in investigating vehicle fires. He has been on GM's engineering staff since 1969, but has been exclusively involved in vehicle fire investigations since April of 1981. He has personally investigated over fifty vehicle fires. The trial judge qualified Bottiglia, not only as an expert in mechanical engineering, but also as an expert in the cause and origin of fires.
After studying the vehicle and its history, reading the depositions of Ezell and Mr. and Mrs. Golden, personally speaking with the firemen, personally visiting the scene of the fire, personally examining the truck on two occasions for five or six hours, and conducting tests involving the shorting out of positive battery cables, Bottiglia concluded that the fire was not caused by any short in the battery cable as suggested by Dr. Newell, but was instead caused by arson. Bottiglia felt that the evidence showed that one fire originated in the cab and another in the engine compartment. The only way that both fires could have started in this manner and burn as they did, was by the means of an accelerant.
The defendants also presented Thomas Jackman, an expert in the field of analytical chemistry with special expertise in the analysis of fire debris. Jackman examined various samples of debris taken from the cab. After conducting atomic absorption tests on the debris, he found unusually high traces of lead, which indicated to him that leaded gasoline may have been used as the accelerant.
To rebut Jackman's testimony, the plaintiff called Dr. Harry Mosely, an expert in the field of chemistry. Dr. Mosely criticized Jackman for not testing for tin, which would have indicated that the excessive lead tracings were due to the solder which *958 was present in the cab. Dr. Mosely did concede that the atomic absorption test is a very good test for lead and that Jackman's methods were fine. Dr. Mosely also admitted that he could not state that he felt that the test results did not reflect the presence of an accelerant.
The weight to be given testimony of experts is largely dependent on their qualifications and facts upon which their opinions are based. Middle Tennessee Council, Inc. v. Ford, 274 So.2d 173 (La. 1973). Expert testimony is weighed by the trier of fact in the same manner as other evidence. Smith v. Lumbermen's Mutual Casualty Company, 414 So.2d 1281 (La. App. 3 Cir.1982), writ denied, 417 So.2d 367 (La.1982). Because we cannot find that the trial judge was clearly wrong in believing the defendants' experts rather than plaintiff's experts, we affirm.
For the aforementioned reasons, the judgment of the trial court is affirmed.
All costs of this appeal are to be taxed against plaintiff-appellant.
AFFIRMED.
NOTES
[1] The seller may, for example, show that the defect was not one of manufacture, or that there has been some intervening abuse, alteration or other act which relieves the manufacturer and/or seller of responsibility for the defect. Rey v. Cuccia, 298 So.2d 840 (La.1974).