# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

July 30, 2012

No. 11-30970

Lyle W. Cayce
Clerk

HDRE BUSINESS PARTNERS LIMITED GROUP, L.L.C.,

Plaintiff-Appellant

v.

RARE HOSPITALITY INTERNATIONAL, INCORPORATED, doing business
as Longhorn Steakhouse,

Defendant-Appellee

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 5:09-CV-977

Before REAVLEY, PRADO, and OWEN, Circuit Judges.

PER CURIAM:[*]

The main issue in this appeal is whether an assignment of a purchase
agreement was intended to novate a lease agreement. The district court held
that the parties' intent to novate the lease was clear from the assignment, and
it granted summary judgment to the Defendant-Appellee RARE Hospitality
International ("RARE"). Plaintiff-Appellant HDRE Business Partners Limited
Group, L.L.C. ("HDRE") appeals. Reviewing the district court's judgment de

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not
be published and is not precedent except under the limited circumstances set forth in 5TH CIR.
R. 47.5.4.

No. 11-30970

novo, *Langhoff Props., LLC v. BP Prods. N. Am., Inc.*, 519 F.3d 256, 260 (5th Cir. 2008), we conclude that the parties' intent presents a fact issue, and we therefore REVERSE the district court's judgment.

In February 2008, HDRE and RARE executed a lease agreement whereby HDRE agreed to lease to RARE commercial property that it did not yet own so that RARE could operate a restaurant on the property. This arrangement was permissible under Louisiana law. The lease contained a feasibility period that afforded RARE sixty days to walk away from the agreement if it determined that the property was not suitable for its purposes. The lease also provided that HDRE would acquire title to the property within thirty days of RARE obtaining necessary building permits. HDRE separately entered into a purchase agreement with Stirling Bossier, L.L.C. ("Stirling") to buy the property that was the subject of the lease agreement. Both the feasibility period of the lease and the closing date of the purchase agreement were extended several times as the parties' engaged in negotiations.

On May 5, 2008, before the feasibility period was set to expire on May 9, RARE notified HDRE's principal Wesley Dingler that it would prefer to buy the Stirling property rather than lease it. RARE asked if HDRE would assign HDRE's right to purchase the property to RARE, but RARE did not expressly exercise its right to terminate the lease agreement. HDRE agreed to the assignment request, and on May 16, 2008, HDRE, RARE, and Stirling executed an assignment agreement giving RARE the right to buy the property. The assignment provided that if RARE closed on the transaction and acquired the property, it would pay HDRE a fee of $210,000, which represented compensation for the assignment and reimbursement of certain deposits and expenses. Similar to the original lease agreement, the assignment also allowed RARE to terminate the agreement if it did not obtain internal corporate approval for the purchase within a specified time.

2

No. 11-30970

When RARE did not obtain corporate approval, it notified HDRE and Stirling on May 28, 2008, that it would not be going forward with the purchase. HDRE then sought enforcement of the original lease agreement and instituted this action for breach of contract after RARE claimed that the lease had been novated. The district court granted RARE summary judgment, holding that the assignment was a novation of the lease. HDRE now appeals.

A novation is "the extinguishment of an existing obligation by the substitution of a new one." LA. CIV. CODE ANN. art. 1879. "The most important factor in determining whether a novation has been effected is the intent of the parties." *Scott v. Bank of Coushatta*, 512 So. 2d 356, 360 (La. 1987). "[A] novation may occur where the intent of the parties, the character of the transaction, the facts and circumstances surrounding the transaction and the terms of the agreement reveal a desire to effect a novation." *Id.* The parties' intent to extinguish an existing obligation "must be clear and unequivocal. Novation may not be presumed." LA. CIV. CODE ANN. art. 1880. Therefore, the burden of proving a novation is borne by the party asserting it. *Scott*, 512 So. 2d at 360 (citing *Placid Oil Co. v. Taylor*, 325 So. 2d 313 (La. Ct. App. 1975)).

In this case, HDRE argues that the district court erroneously granted summary judgment and ignored its evidence that it did not intend for the assignment to novate the lease agreement. RARE argues in response, and the district court held in part, that the assignment was a novation because it could not coexist simultaneously with the lease agreement. The district court believed that the intent to novate was clear from a "four-corners" analysis of the documents, and that once HDRE assigned its right to buy the Stirling property it could not also be a party to the lease insofar as the lease required HDRE to have good title to the property. We disagree with the district court's analysis.

As an initial matter, the assignment agreement does not address the issue of novating the lease agreement, and other evidence in the record controverts a

3

finding of novation. Specifically, deposition testimony from both Wesley Dingler and HDRE's attorney, Cody Cowan, disputed that HDRE intended to substitute the assignment agreement for the lease agreement. They explained that HDRE agreed to assign its right to purchase the property because RARE agreed to pay an assignment fee if the transaction was complete, but that HDRE also believed that if the transaction did not go through, the original lease would act as a "safety net" for HDRE. In other words, HDRE had conditional protection for the assignment. If RARE purchased the property, HDRE would receive the assignment fee, thereby obtaining a profit and reimbursement of costs; but if RARE did not purchase the property, HDRE could fall back on the original lease for compensation because RARE had never exercised its right to terminate the lease under the feasibility provision.

The district court believed that HDRE was already on notice that RARE had changed its mind about leasing the property, but the record shows only that RARE notified HDRE that it preferred ownership of the property over the original lease agreement. As noted above, the evidence does not show an unequivocal termination of the lease agreement by RARE, and Dingler testified that RARE never advised him that it wanted to terminate the lease. The district court disregarded the depositions of Dingler and Cowan as "self-serving," but their testimony about HDRE's intent provided an explanation for how the lease and assignment could simultaneously coexist, and it contradicted RARE's position on novation. Thus, the testimony about intent presented a fact issue.

Furthermore, we do not believe that the character of the transaction here made it "inconceivable" that the parties intended for the lease agreement to survive the assignment. *See Placid Oil*, 325 So. 2d at 317 (finding a novation where it was inconceivable under the facts of that case for the parties to have intended for an earlier obligation to continue without mentioning that fact). Initially, HDRE had proposed that RARE pay $210,000 immediately upon

4

No. 11-30970

HDRE's execution of the assignment. Under that arrangement, the fee would have covered HDRE's non-refundable purchase deposit that had been paid to Stirling. But in subsequent negotiations, HDRE agreed to condition the fee on RARE's completing the purchase. Because this conditioning of the assignment fee risked loss of HDRE's purchase deposit if RARE did not complete the purchase, it is consistent with Dingler and Cowan's testimony that HDRE believed that the lease agreement remained as a viable alternative to recover its costs. Moreover, it is also plausible that RARE desired to leave the lease agreement in place as a hedge in case its efforts to purchase the property were unsuccessful. That would explain why RARE never terminated the lease during the feasibility period.[1] We conclude that an intent to novate is therefore not clear and unequivocal here. *See* LA. CIV. CODE ANN. art. 1880.

The district court was also incorrect in holding that the lease required HDRE to have good title to the property. Under Louisiana law, "[a] lease of a thing that does not belong to the lessor may nevertheless be binding on the parties." LA. CIV. CODE ANN. art. 2674 . The lease specifically contemplated that at the time of execution HDRE did not have title to the property and that HDRE would have a defined period in which to obtain title.

Similarly, the district court incorrectly determined, as an alternative to its holding on novation, that the purchase assignment made it impossible for HDRE to perform its obligation under the lease. The Louisiana doctrine of impossibility will not extinguish an obligation unless performance under the contract is absolutely incapable of occurring. *See Payne v. Hurwitz*, 978 So. 2d 1000, 1005 (La. Ct. App. 2008). The assignment agreement may have reduced the

---

[1] We acknowledge that HDRE would have lost its purchase deposit under the lease agreement had RARE exercised its right to terminate the agreement during the feasibility period. That possibility may bear on the credibility of HDRE's explanation for entering into the assignment, but it does not remove the fact issue to be decided by the factfinder.

possibility of HDRE's performance but it did not render HDRE absolutely incapable of acquiring the property for purposes of the lease after RARE declined to continue with the purchase.[2] *See id.* ("[T]he mere fact that such performance has been made more difficult or more burdensome by a fortuitous event" does not relieve an obligor of the duty to perform.).

As alternative bases for affirming the district court, RARE raises two issues. First, it argues that the lease agreement should be considered extinguished by the doctrine of confusion, pursuant to which a lease will cease to operate "when the lessor's interest and the lessee's interest are consolidated in the same person." *In re Dibert, Bancroft & Ross Co.*, 117 F.3d 160, 171–72 (5th Cir. 1997); *see also* LA. CIV. CODE ANN. art. 1903. "For confusion to occur the same person must acquire the full and perfect ownership of both sides of the obligation by a conveyance which is translative of title." *Langley v. Police Jury of Calcasieu Parish*, 201 So. 2d 300, 305 (La. Ct. App. 1967) (internal quotation marks omitted). RARE never purchased the Stirling property and therefore never assumed the qualities of both lessor and lessee.

Second, RARE argues that it may not be held liable for breach of contract because HDRE itself breached the lease agreement by failing to obtain a surety bond. *See* LA. CIV. CODE ANN. art. 2013 ("When the obligor fails to perform, the

---

[2] The district court also held in the alternative that because a separate legal entity known as HDRE Business Partners Limited had actually entered into the purchase agreement with Stirling, and that entity never transferred its rights to the plaintiff—i.e., the HDRE limited liability company—HDRE never held a right to lease the property, and RARE could not have breached the lease agreement. The parties agreed in the district court, however, that the name of the entity on the purchase agreement had been a mistake and should have had no effect on the litigation. In fact, at all times, every interested party in the property, including Stirling as the seller, treated HDRE as the real party in interest despite the name on the purchase agreement. Stirling's acceptance of HDRE as the real purchaser is evident because its grant of extensions on the purchase agreement, and the assignment agreement, all named HDRE as the party at issue. In light of these circumstances, we conclude that the incorrect name on the purchase agreement is not outcome determinative. *Cf. Reynaud v. Bullock*, 196 So. 29, 34 (La. 1940) (holding that contracts may be reformed when a mutual mistake or error fails to account for the parties' true intent).

obligee has a right to the judicial dissolution of the contract or, according to the circumstances, to regard the contract as dissolved."). We are unpersuaded, however, because the terms of the lease specifically required that RARE give HDRE written notice of any breach and thirty days in which to cure a default before allowing RARE the option of declaring the lease terminated. Although RARE contends that HDRE was aware of the breach of the surety clause, it does not point to sufficient evidence of written notice and declaration that the lease was terminated for reason of the breach. Therefore, summary judgment is not appropriate on this basis.

This case presents an unusual set of circumstances among these commercial parties but we conclude that competing evidence as to the intended effect of the assignment on the lease agreement, as well as a reasonable explanation for the coexistence of those two obligations, created a fact issue as to the parties' intent. It was error for the district court to disregard Dingler's and Cowan's testimony at the summary judgment stage when all inferences are to be resolved in favor of HDRE. The district court's judgment is therefore reversed and the cause remanded for further proceedings.

REVERSED and REMANDED.

11-30970

OWEN, Circuit Judge, dissenting.

Because I would affirm the district court's judgment, I respectfully dissent. I agree with the district court that there is no material fact issue and that when RARE and HDRE entered into the Assignment of HDRE's right to purchase the property at issue from Stirling, both RARE and HDRE clearly expressed the intent to novate the prior Ground Lease agreement under which RARE and HDRE had agreed that, subject to certain contingencies, HDRE would purchase the property from Stirling and lease it to RARE. When HDRE and RARE entered into the Assignment agreement, HDRE no longer had the means of performing the prior Ground Lease agreement. It is clear that the new agreement, the Assignment agreement, was to supersede entirely the earlier Ground Lease agreement.

The panel majority's reasoning cannot withstand analysis. After RARE decided not to purchase the Stirling property and therefore was not obligated to pay HDRE under the Assignment agreement, it is at least conceivable that HDRE might have been able to negotiate a new purchase agreement with Stirling. However, that would not have been done within the contemplation of the Ground Lease agreement. Even if HDRE were able to purchase the Stirling property and to purchase it on terms similar to those under the original purchase option it had with Stirling that it later assigned to RARE, it is clear that RARE would not have been entitled to sue HDRE if HDRE was unsuccessful in acquiring the Stirling property. RARE's rights to enforce the Ground Lease agreement were extinguished once HDRE and RARE agreed to restructure their transaction and HDRE assigned its option to purchase the Stirling property to RARE. RARE could not thereafter claim that HDRE remained obligated to purchase the Stirling property and that HDRE would have to pay damages if it could not perform under the Ground Lease agreement. For the same reasons, after the parties entered into the Assignment agreement,

8

HDRE could not thereafter claim that RARE remained obligated to lease the property from HDRE. There was a novation of the Ground Lease agreement. If no novation was intended, then there was no novation of *either* party's rights under the Ground Lease agreement. But that is certainly not a viable proposition in light of the facts of this case. The panel majority strains to find a possible agreement between HDRE and RARE that neither the facts nor the law can support.

## I

RARE desired to build a steakhouse on a parcel of land owned by Stirling that was part of a shopping center. RARE approached HDRE to arrange for HDRE to purchase the property from Stirling, and RARE would then lease the property from HDRE. HDRE subsequently entered into a Purchase Agreement with Stirling under which HDRE had the exclusive option to purchase the property at issue. During the negotiations between HDRE and RARE of the specific terms of their agreement, RARE was acquired by a larger restaurant chain. Eventually, the Ground Lease was signed between RARE and HDRE under which RARE could opt out with no penalty during a feasibility period. HDRE made several non-refundable payments to Stirling to secure and later extend the exclusive option to purchase the property while RARE continued to study the feasibility of the project.

Before the Ground Lease agreement was fully effectuated, RARE informed HDRE that it would rather buy the Stirling property outright instead of leasing it from HDRE. RARE asked HDRE to assign its exclusive purchase option to RARE, which HDRE agreed to do. Under that Assignment agreement, RARE agreed to pay HDRE $210,000 if it purchased the property from Stirling, but HDRE would receive nothing if RARE decided against purchasing. Consistent with the change in the nature and structure of the deal between HDRE and RARE, HDRE and Stirling executed a third and final extension agreement of the

9

11-30970

purchase option that also required HDRE to assign its exclusive purchase option to RARE. The Assignment agreement between RARE and HDRE was subsequently executed. RARE ultimately chose not to purchase the Stirling property, as it had the right to do. HDRE recognized that it had no recourse against RARE under the Assignment agreement, and HDRE instituted this suit seeking damages for breach of the Ground Lease agreement, even though HDRE never acquired the property from Stirling and therefore never had the ability to lease the property to RARE.

## II

RARE contends, and the district court held, that when HDRE and RARE entered into the Assignment agreement, and HDRE assigned its right to purchase the Stirling property to RARE, HDRE and RARE intended for there to be a novation of the original Ground Lease agreement. Under Louisiana law, which governs this dispute, a court may consider "the character of the transaction, the facts and circumstances surrounding the transaction and the terms of the agreement" in deciding whether the parties intended to effect a novation by substituting a new obligation for a former one.[1] Novation may not be presumed, but it also need not be expressly declared in the written agreement.[2] In this case, the terms of the Assignment agreement are silent on its effect on the Ground Lease agreement, but the character of the transaction as a whole and the facts and circumstances surrounding it leave no doubt that the parties intended to replace the Ground Lease when they executed the Assignment agreement.

---

[1] *Scott v. Bank of Coushatta*, 512 So. 2d 356, 360 (La. 1987).

[2] *Placid Oil Co. v. Taylor,* 325 So. 2d 313, 316 (La. App. 3d Cir. 1976), *writ denied*, 329 So. 2d 455 (La. 1976).

11-30970

The decision in *Placid Oil Company v. Taylor* is instructive.[3] In that case, Taylor owned a portion of the mineral interests in two tracts of land and leased his interest to an oil company in 1964 in exchange for a one-eighth royalty.[4] Those mineral interests were later sold through mesne conveyances to Johnson. Johnson also acquired other mineral interests in the two tracts of land in addition to the mineral interests that Taylor had owned. Johnson entered into a lease with the oil company in 1965 purporting to cover all of his mineral interests in the two tracts of land.[5] The latter lease provided for a one-fourth royalty, and made no reference to the previous lease.[6] The court of appeals noted that there were three conceivable arguments regarding the intent of Johnson and the oil company in entering into the 1965 lease, which were (1) the 1964 lease was extinguished and the 1965 lease substituted; (2) the 1964 lease continued in effect as to the Taylor interests and the 1965 lease covered only those interests that Johnson acquired in addition to the Taylor interests; and (3) the 1964 leases were to co-exist, with the result that the oil company owed a three-eights royalty as to the Taylor interests.[7] None of the parties advocated for the third possibility.[8] The oil company urged the court to embrace the second possibility and argued that it owed only a one-eighth royalty on the Taylor mineral interests. The Louisiana court rejected that argument and held that as a matter of law, "a novation clearly was effected by the execution of the 1965

---

[3] *Id.*

[4] *Id.* at 314.

[5] *Id.* at 315.

[6] *Id.*

[7] *Id.* at 316-17.

[8] *Id.* at 317.

11

lease."[9] The Louisiana Court of Appeal concluded that it was "inconceivable" that the parties would fail to mention the prior lease if they had intended to continue to enforce its terms in spite of the new lease.[10]

The same logic applies here. There are three possible scenarios. One is that the Ground Lease agreement and subsequent Assignment agreement coexist, with no novation at all. Neither party argues that this was its intent. HDRE candidly acknowledged at oral argument that if RARE *had* purchased the Stirling property and paid HDRE $210,000, the Ground Lease agreement would have been extinguished. The second possibility, according to HDRE, is that the parties intended a novation *only* if RARE decided to purchase the property from Stirling. HDRE contends that RARE was obligated to either lease the property or purchase it, but not to walk away from the proposed restaurant project. This is entirely at odds with every written document executed by the parties and by Stirling. The original Ground Lease agreement allowed RARE to terminate within the feasibility period. RARE had the option of choosing not to proceed with leasing the property. The Assignment agreement was already under negotiation by the time the feasibility period under the Ground Lease agreement expired, and HDRE had failed to meet certain obligations it had under the Ground Lease agreement at that time.

On the date that the feasibility period in the Ground Lease agreement expired, HDRE executed a third extension agreement with Stirling which required HDRE to assign its exclusive option to purchase the Stirling property to RARE. When HDRE then assigned the option to purchase to RARE, the Assignment agreement did nothing to obligate RARE unconditionally to purchase, much less lease, the Stirling property. Nothing in the Assignment

---

[9] *Id.*

[10] *Id.*

agreement indicates that the parties intended a novation of the Ground Lease agreement only if RARE actually consummated the purchase of the Stirling property. Instead, the record shows that HDRE originally asked RARE to pay $210,000 at the time the Assignment agreement was executed, regardless of whether RARE completed the purchase from Stirling. RARE rebuffed that request, and the parties expressly agreed in writing as part of the Assignment agreement that HDRE would be paid by RARE if and only if RARE purchased the property from Stirling.

The third possible scenario regarding novation is that RARE and HDRE intended for the Assignment agreement to replace the Ground Lease agreement entirely. This is the only possibility that is supported by competent evidence. Testimony from HDRE's principal and its attorney regarding subjective intent or an oral agreement is insufficient to raise a fact issue regarding intent when that testimony contradicts the written Assignment agreement and all contemporaneous written documentation and agreements.

When HDRE assigned its exclusive right to purchase Stirling's property to RARE, HDRE no longer had the ability to lease to RARE. The Ground Lease agreement between HDRE and RARE was subject to contingencies that never occurred, one of which was that HDRE would exercise its option with Stirling and purchase Stirling's property. Once HDRE assigned its right to purchase to RARE, the sequence of events contemplated by the Ground Lease agreement, including HDRE's exercise of its option to purchase the Stirling property, could not occur. After the Assignment, HDRE no longer had the right to purchase the Stirling property.

Instead, HDRE and RARE both agreed, in writing, that the *right* to purchase the Stirling property would be conveyed by HDRE to RARE. HDRE and RARE further expressly agreed in writing that although RARE had the right to purchase the Stirling property, it did not have the *obligation* to do so.

11-30970

Both HDRE and RARE agreed in writing that HDRE would be compensated if and only if RARE actually exercised the right to purchase the Stirling property. No vestige of the Ground Lease agreement remained.

\* \* \* \* \*

I would affirm the district court's grant of summary judgment and therefore dissent.